(No. 19512.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK REMBOWICZ *et al.* Plaintiffs in Error.

*Opinion filed June 19, 1929—Rehearing denied October 5, 1929.*

FRANK A. McDONNELL, (ELWYN E. LONG, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error, Frank Rembowicz, otherwise known as Jerry Rembowicz, and Martin Sonemberg, (herein called defendants,) were convicted in the criminal court of Cook county by a jury on an indictment charging them with the crime of the burglary of a drug store and the larceny of certain money and property therein contained, located in the city of Chicago, in Cook county, and owned by Jack L. Cotter. Their motions for a new trial and in arrest of judgment were overruled by the court and they were sentenced to serve indefinite terms in the penitentiary. They bring the record to this court for review by writ of error.

The undisputed facts in the record are the following: In October, 1927, Jack L. Cotter owned and operated a drug store located on the northeast corner of the intersection of Fullerton avenue, running east and west, and California avenue, running north and south. Cotter closed his store near midnight on Saturday, October 15, 1927. About ten minutes after five o'clock on Sunday morning, October 16, 1927, the drug store was burglarized and the drawer of the cash register in the drug store was opened and all the money therein left on the night before was stolen, except some pennies, nickels and dimes that were later found on the floor, amounting in all to about thirty-seven cents. The drug store had been entered through a side window on California avenue. The window had been broken by a brick or a rock thrown through it from the outside. The burglars had also stolen quite a number of cigarettes that they found in the drug store, some of which were known as Lucky Strike cigarettes. Cotter also kept other brands, among them being Chesterfields and Camels, some of which

also appeared to be missing. A number of bottles of medicine had been knocked off the shelves and some white powder was scattered on the floor and the cash register was left open.

The foregoing facts were established by a number of witnesses for the State, including Cotter, the owner of the drug store and contents, who further testified, in substance, as follows: He was called at his home by his clerk, who informed him that his store had been broken into and that the police officers were then at the store, about 7:30 A. M. Sunday, October 16, 1927. He arrived at his store about twenty minutes later. When he left the store on the Saturday night before, there was about $8.50 in money, in change, in the drawer of the cash register and also a "bank roll of fifty pennies." He was shown by the attorney for the State a bank roll of fifty pennies, marked, "State's exhibit 1," and was asked if it looked like the one he had in the cash register. He answered, "Yes; it looks like it." He testified that he found two or three packages of Lucky Strike cigarettes missing from a carton he had opened the night before; that he had in his store several different brands of cigarettes, Chesterfields, Camels, Lucky Strikes and various other brands, and that there were probably two or three other packages missing other than the Lucky Strikes above mentioned by him.

Steve Frepouski, a milk wagon driver for the Irving Park Dairy Company, testified, in substance, as follows: He customarily passed Cotter's drug store every morning when delivering milk. He passed that store on the morning of October 16, 1927, at 5:10 o'clock. The street lights were burning at that time. He saw an automobile parked, facing south, on the west side of California avenue, across from Cotter's drug store, and saw the little fellow (indicating the smaller one of the defendants) coming out of the drug store window on California avenue, and saw the big fellow (indicating the other defendant) on the side-

walk, receiving parcels from the little fellow. The little fellow had on a sweater of mixed color. The big fellow had on a dark-blue suit. Witness had never seen either of them before. He identified the two defendants as the two men he saw at said window. He then drove his milk wagon south on California avenue to a police station and told the police about seeing the defendants and what they were doing when he saw them. He went back to the drug store in an automobile with the police officers. When he and the police got back to the drug store the automobile that he had seen there was just leaving. The police then followed the automobile that was leaving, one block on Fullerton avenue, thence north on Fairfield avenue to Altgeld street, and west on Altgeld street a short distance to a point where the automobile they were following had stopped. There were four men in the car that had stopped as before stated. The witness pointed out to the police the two defendants, whom they found in that car, as being the men he had seen at the drug store before going to the police station. All four of the men were arrested. Witness saw one of the police officers search the automobile in which the four men were found but paid no attention to what the officers found by their search. All the witness did on that occasion was to point out to the police the man he had seen come out of the drug store through the window and the man who received parcels from him from the window. The two men he so pointed out were the defendants and were two of the four men that were in the car that the police followed as aforesaid.

George D. Wanland, a police officer, testified for the State, in substance, as follows: He was at the Shakespeare avenue police station on the morning of October 16, 1927, when the witness Frepouski came there and told him and the other officers that Cotter's drug store was being burglarized. The police station was two blocks from the drug store. He and other officers got into the witness' auto-

mobile and the other police officers got into a police Ford. As he, in his car, approached the intersection of California and Fullerton avenues he observed an automobile on the west side of California avenue, north of that intersection, "just starting up." It appeared to be a Moon car. It turned east into Fullerton avenue, went east one block, then turned north on Fairfield avenue, and then, after going one block, turned west on Altgeld street and stopped at the intersection of that street and California avenue. There were four men in the car. Two of them were the defendants and a third one was Frank Pelzec, who owned the car. The police officers searched the four men for weapons but found none. They arrested all four of them and took them to the Shakespeare avenue police station. They further searched the men at the police station and found five or six packages of cigarettes in the pockets of Rembowicz. They also found in his pockets five dollars and some cents, in pennies, nickels, dimes and quarters, and two one-dollar bills. This change, amounting to $5.68, with the two one-dollar bills, was identified by the witness as State's exhibit 3.

The foregoing testimony of Wanland was corroborated in all of its substantial details by the witness Charles W. Korton, a police officer who was at Shakespeare avenue police station on the morning of the robbery and who testified for the State. It was also corroborated by another police officer at that same station, Meyer G. Sovea, who also testified for the State.

The police officer aforesaid, Wanland, further testified, in substance, as follows: All the four men that were arrested appeared to have been drinking. The police officers searched Sonemberg and found in his pockets $5.96 in pennies, nickels, dimes, quarters and half-dollars. When the four men were asked where they got the cigarettes, Rembowicz stated that he had met his partner, Sonemberg, and two other men, one of them Frank Pelzec, on Saturday

evening before the robbery and they had visited some "beer flats;" that one of these beer flats was on Elston avenue, near the railroad tracks, and one at North avenue and Robey street, and that they were also at a soft drink parlor in the 4200 block on North avenue, run by a man named Fisher. On inquiry at the beer flat on Madison street the witness learned that Rembowicz had been there that evening with "a street car man." At Fisher's soft drink parlor the witness was told by Fisher that Rembowicz had been there with "a street car man" and two other men and that he bought no cigarettes there that evening. Upon searching the car in which the four men, including the two defendants, rode on the morning of their arrest, the police officers found the bank roll of pennies identified by the witness Sovea in his testimony and marked as State's exhibit 1, and several packages of cigarettes. The cigarettes which had been identified by Sovea were also identified by the witness Wanland as being packages of cigarettes found in the car, and which were marked as State's exhibit 2. Wanland further testified that when the officers reached the car where the four men were arrested Frepouski pointed out the defendants as the men he had seen at the drug store. Frepouski said that the little fellow (Rembowicz) was the one that he saw coming through the window, and that he had on a red sweater, and that "the big fellow" (Sonemberg) was the one he saw standing on the sidewalk receiving the packages from the little fellow at the window of the drug store. No one of the four men in the car claimed to own the roll of pennies found in the car.

Meyer G. Sovea, the police officer whose testimony, in part, is heretofore indicated, further testified that the four men in the car the police officers followed from Cotter's drug store were the two defendants, Frank Pocziswki, a "street car man," and another man whose name he did not recall; that the four men were fully dressed, and that it was not cold enough at that time for overcoats. He iden-

tified the roll of fifty pennies (referred to in the testimony of Cotter as a "bank roll of fifty pennies") as the same roll of pennies the police officers found in the rear of the burglars' car and which no one of the four occupants claimed to own, which roll is marked as State's exhibit 1. He also identified the packages of cigarettes, marked as State's exhibit 2, and testified that they were the same cigarettes found in the burglars' car by the police officers after the four men were removed from the car. He testified that some of the men in the car said they bought the cigarettes at the corner of Forty-second and Madison streets, and that the officers inquired of the parties who were doing business at Forty-second and Madison streets and were informed by those business men that they had sold no cigarettes in that quantity to anyone.

The three exhibits of the State (No. 1, the roll of fifty pennies rolled in a piece of paper as bankers roll them, No. 2, the packages of cigarettes found in the burglars' car, and No. 3, the money taken from Rembowicz at the police station when he was searched by the officers,) were admitted in evidence by the court over the defendants' objection. It was then stipulated by the State and the defendants that Rembowicz and Sonemberg were, respectively, of the ages of thirty-three and twenty-five years.

Three witnesses for the defendants, George Spencer, Al Duszynski and Harry Krupp, testified that they and Sonemberg went to the home of Rembowicz on the night of October 15, 1927, about 11:00 o'clock, and they and the defendants played penny-ante poker there until 3:45 or 4:00 o'clock on the morning of October 16, 1927. The game broke up a little before 4:00 o'clock when two men, whom the witnesses did not know, came and asked for Rembowicz. After some conversation with these men, in which something was said about going out to pick mushrooms, the defendants left with the two men and the witnesses went home. Spencer further testified that the defendants left

before he did and that he got home at 4:00 o'clock, that he won twenty-six cents in the poker game, and that he did not know that either of the defendants won any money in the game. Krupp also testified that he had known Rembowicz for several years. He knew Rembowicz was employed and working during the month of October, 1927. When asked if he knew his reputation for truth and veracity in the neighborhood where he resided at and prior to that time as being a law-abiding citizen, he said, "As far as I know I never heard a thing against him or any trouble with him; nothing but good."

Thomas Deticanio, a witness for the defendants, testified that he was foreman of the wood-working department at the place where he worked, and that Sonemberg was working there in October, 1927, and had been employed there since 1926. When asked if he knew his reputation for truth and veracity among his associates and in the community where he resided prior to October 16, 1927, he said: "His reputation was all right—all right over at the shop; he is a hard worker, never drank, and is all right." The question was then asked, "His reputation for what?" The State's attorney objected as too general. The objection was sustained and the answer ordered stricken. The witness was again asked if he knew Sonemberg's reputation for truth and veracity, to which he replied, "No, sir."

J. J. Tozer, a witness for the defendants, testified that he had known Rembowicz for five years and that he was employed by witness in October, 1927, and had worked for him for two years. Witness was asked, "Do you know his reputation as a law-abiding citizen?" and he answered, "Yes." An objection by the State's attorney was interposed and sustained. No further question was asked this witness about the reputation of either of the defendants or witness' knowledge thereof.

The testimony of the defendant Sonemberg is substantially the following: On the evening of October 15, 1927,

he met George Spencer and Al Duszynski and they went to the home of Rembowicz. Rembowicz and Harry Krupp were there and the five of them started playing cards at about 11:00 o'clock. They had a little wine to drink. They played until about 3:30 o'clock on the morning of October 16, 1927. At that time two men, Frank Pelzec and Sidney Meyer, came and asked for Rembowicz. After some conversation between Pelzec, Meyer and Rembowicz the two defendants left with Pelzec and Meyer to go out into the country to gather mushrooms. It was about the right time to gather mushrooms. They left in an Elcar coach automobile. Meyer lived at Fairfield avenue and Altgeld streets. He had on his good clothes and wanted to change them before going out into the country. They drove the car to the intersection of Fairfield avenue and Altgeld streets and stopped for Meyer to get out and change his clothes. Meyer said it was too late in the morning to go in and wake up the family and he changed his mind about changing his clothes. While the car was stopped there the police officers drove up, ordered them out of the car, searched them, arrested them and took them to the police station. At the police station the officers took about $7.30 from witness, for which they refused to give him a receipt. He had two packages of cigarettes in his pockets which the police allowed him to keep. After he was put in a cell the police gave him a slip showing the money they had taken from him. He had never seen the roll of pennies (State's exhibit 1) until he saw it in the court room. He knew nothing about its being in the automobile and knew nothing about any cigarettes being in the car, other than the two packages he had in his pocket. He did not specifically deny taking part in the burglary of the drug store.

Defendant Rembowicz testified substantially as follows: He lived at 1731 North Hermitage avenue, in the city of Chicago, and had lived there for thirty-three years. On

Saturday evening, October 15, 1927, he met Pelzec and Meyer at a bowling alley and later at a restaurant, and they agreed to go out in the woods about Deerfield and gather mushrooms the following morning. He told Pelzec and Meyer to meet him at his home. Later in the evening he was at home with Harry Krupp. Al Duszynski, George Spencer and Sonemberg came to his home, and they played penny-ante poker until about 4:00 o'clock on the following morning, when Pelzec and Meyer came to his home and he and Sonemberg left with them to go out and get mushrooms. They went in Pelzec's car. It was a drizzly, foggy morning and Meyer wanted to change his clothes before going out to the woods. Meyer lived near the corner of Altgeld street and Fairfield avenue. Witness did not know the address. When they came to the intersection of those two streets, Meyer, who was "kind of sleepy, groggy," said to stop there. They stopped and the policemen drove up, arrested them and took them to the police station. Witness was dressed in a blue serge suit and Sonemberg had on a dark-blue suit. Neither of the four men had on a sweater. At the station they were searched. Four packages of cigarettes were taken from witness but later returned to him. He had $20 in a pocket. The police did not take that. They did not take two one-dollar bills from him. He had never seen the roll of pennies (State's exhibit 1) before he saw them in the court room, and had never before that time seen State's exhibit 2 (the cigarettes that the policemen said were found in the automobile) or State's exhibit 3, (the money that the police officers said was taken from witness.) Witness denied any connection with the burglary of the drug store and said he was never in that store in his life.

The defendants first contend that the court erred in admitting in evidence the three exhibits introduced by the State. We have set forth substantially the whole of the evidence in this case. The facts that the drug store of the

witness Cotter was burglarized, that several packages of cigarettes therein were stolen, and that several dollars of money in change, including a roll of fifty pennies, were also stolen, are clearly established and are not disputed. The defendants were arrested a few minutes after the burglary was completed and were identified as being the parties who committed the burglary and larceny by the witness Frepouski. A roll containing fifty pennies, just like the one that was stolen from the drug store, was found in the burglars' car after the defendants were removed from the car, and no one in that car when it was overtaken by the police claimed to be the owner of that roll or gave any satisfactory explanation of the fact that it was in the car. Several dollars in change, just like the money that was stolen from the cash register in the store, were taken from the pockets of Rembowicz when he was searched by the officers. These three severally described articles are the ones admitted in evidence. It is true that no one of the three exhibits was shown to be the identical articles that were stolen. Manifestly they could not be so identified. They are all of a character of property that cannot be ordinarily identified unless they happen to bear some mark or designation not peculiarly belonging to such property generally. Cotter, the owner of the drug store and of the personal property therein and therefrom stolen, could not identify the several exhibits as made up of the identical articles stolen from his store, and if he had done so it would have greatly weakened his evidence unless he could show markings or characteristics of that property that enabled him to so identify it. He did the next best thing he could do for the State, and that was to testify that all the articles were like the articles that were stolen from him, and in view of the other proof in this record the State was entitled to introduce such evidence. The police officers discovered the car at the very place where Frepouski located it when he saw the burglary being committed. They im-

mediately gave chase of it when it started moving to the place where it was finally overtaken. It was found by the officers to contain the two defendants—the parties identified by Frepouski as being the men that he saw committing the burglary. The fact that the car then contained articles just like the articles stolen from the drug store, that one of the defendants then had on his person change in money just like the several kinds of money stolen from the drug store, and the proof by the officers that the three exhibits were the same property taken from the car and from the defendant aforesaid by such search and seizure, furnished strong and weighty evidence that the property contained in the exhibits, or a part thereof, is the same property that was stolen from the drug store, when considered with all the other evidence in the case; and such proof is a circumstance that points to the guilt of the defendants, and the State was entitled to introduce to the jury the exhibits, just as much so as it was entitled to make proof of the character of property stolen from the drug store and that the exhibits contained property just like the property that was stolen.

The next contention of the defendants, that the court erred in excluding the testimony as to the defendants' reputation, cannot be sustained. The reputation of the defendants for truth and veracity at the time it was offered was not admissible. Neither of the defendants had at that time testified, and so far as the record shows there was no suggestion that they would testify. Therefore there was no such issue before the jury at that time and no such question could arise until the defendants did testify. No such evidence was offered after they did testify. The court did not err in sustaining the objection to the question put by the defendants to the witness Tozer, "Do you know his reputation as a law-abiding citizen?" This question was asked with reference to Rembowicz. It was open to objection for two reasons: First, because it did not specify the

time of the reputation—that is, the question was not restricted to the reputation of the defendant at the time and prior to the commission of the crime charged; and second, the question was not confined to the reputation of the defendant in the neighborhood in which he resided or among his associates.

There were no other objections by the defendants as to the competency or admissibility of the People's evidence, and the objections thereto that the defendants have made cannot be sustained.

The final contention made by the defendants is that the verdict is not supported by the evidence in the record. It requires no discussion or analysis of the evidence to show that this contention cannot be sustained. This was a question left to the determination of the jury. While the evidence, in some parts of it, is conflicting, yet the testimony offered in behalf of the defendants in many particulars is corroborative of the evidence of the State offered against them. The evidence is amply sufficient to warrant the verdict of the jury, and the finding of the jury and of the trial court should be sustained. This court is not warranted in any case in setting aside the finding of a jury that the defendants are guilty, where no reversible errors have been committed, unless the finding is so palpably contrary to the evidence or unless the evidence is so unsatisfactory as to justify the conclusion that there is a reasonable doubt of their guilt. *People* v. *Thompson,* 321 Ill. 594.

The judgment of the criminal court is affirmed. .

*Judgment affirmed.*