THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN SCHWAB and JOHN ZOLDEK, Defendants.

County Court, Kings County, May 18, 1944.

960

*Baker & Rosen* for defendants.

*Thomas Cradock Hughes, Acting District Attorney (Edward H. Levine* of counsel), for plaintiff.

LEIBOWITZ, J. The defendants Zoldek and Schwab were convicted by a verdict of a jury of the crime of burglary in the third degree and are awaiting sentence. They move to set

aside the verdict on the ground that as a matter of law the prosecution has utterly failed to prove guilt beyond a reasonable doubt.

The evidence disclosed the following facts: Solomon Friedman conducted a drugstore on one of the corners of Wythe Avenue and South First Street in Brooklyn. The entrance to the store proper was on Wythe Avenue, and on South First Street there was a hallway which led to the upper floors of the same building.

On January 26, 1944, at about 10:00 P. M., Friedman closed his shop for the night. About four o'clock of the following morning these defendants and one Helen Brostowicz were seen on Wythe Avenue only a few feet distant from Friedman's store. An hour later a police officer discovered that a sizeable hole had been hacked into the plaster and cement wall of the hallway, thus effecting means of entry into the rear room of the drugstore. Various articles were strewn about, and on the floor was found a mutilated " Gillette " razor blade display card from the face of which several small packages of the blades had been ripped, leaving irregularly scarred spaces thereon. From the cash register some silver and nickel coins, as well as a roll of fifty pennies, had been removed. Thereafter, Mr. Friedman inspected the shelves in his shop and discovered empty spaces which had been occupied by packages of " Colgate " dental cream, " Palmolive " shaving cream, " Triumph " playing cards, and " Gillette " razor blades when he had closed his place the night before.

After the police officer found the premises burglarized, he went to the roof of this and adjacent buildings in search of the criminal or criminals, and from this vantage point he observed a figure darting across the street into a neighboring building. He identified this person as the defendant Schwab.

Helen Brostowicz lived on Wythe Avenue about two houses away from the drugstore. Recalling that he had seen the defendants in the company of Helen Brostowicz earlier that morning, the police officer went to the Brostowicz apartment. There he found the defendant Schwab lying in bed in his underwear. Schwab's overcoat, sweater, hat, and shoes bore white plaster dust spots. In his overcoat pocket there were a carton containing ten packages of " Gillette " razor blades and one tube of " Colgate " dental cream. In a garbage pail in the bathroom of the Brostowicz's apartment there were three cartons containing three full tubes of " Colgate " dental cream, four cartons containing four full tubes of " Palmolive "

shaving cream and three packages of new "Triumph" playing cards. When asked by the police officer where he, Schwab, had obtained these articles, Schwab replied that he did not know. When Helen Brostowicz retired after four o'clock that morning, these articles were not in her apartment. The conclusion is irresistible that Schwab, who came there later, had brought them with him into her home.

At the defendant John Zoldek's home the police officer found his leather jacket and hat. Both articles had characteristic plaster dust spots on them. In a pocket of the jacket were fifty pennies and eleven packages of "Gillette" razor blades. Adhering to two of these eleven packages were some thin, irregularly shaped layers of the cardboard and also a separated torn piece of cardboard, all of which, when fitted to the torn display card found in the drugstore, showed beyond question that they had been ripped from the display card. It was as if three missing pieces from a jigsaw puzzle had been found, and by fitting them into their proper places the picture of the puzzle was thus made complete.

Admittedly there was no eyewitness to the burglary. The prosecution, however, relies upon the proved circumstances to fasten guilt upon the defendant, viz.: (1) that the articles, which were the fruits of the crime, were found in the recent, conscious and exclusive possession of the defendants, for which possession no innocent and truthful explanation has been advanced; and, (2) other incriminating circumstances.

As stated by CARDOZO, J., in *People* v. *Galbo* (218 N. Y. 283, 290): "It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal." Where it is demonstrated that a burglary has been committed, such unexplained or falsely explained recent and exclusive possession by the defendant of the stolen property creates a presumption of fact that the defendant not only committed the larceny but also the burglary. (*Knickerbocker* v. *The People,* 43 N. Y. 177; *Stover* v. *People of the State of N. Y.,* 56 N. Y. 315; *People* v. *Richards,* 263 App. Div. 586.) Neither defendant took the witness stand to explain the possession, and, as already mentioned, Schwab told the police officer that he did not know where he obtained the articles.

The chief argument advanced by the defendants is that the prosecution failed to prove identification, namely, that the articles found in their possession are part of the loot taken from the drug store. It is a matter of common knowledge and

it is undisputed that " Colgate," " Palmolive," and " Gillette " products, as well as " Triumph " playing cards are nationally advertised brands of merchandise. Friedman could not and did not identify these articles with any degree of certainty. Does the case against these defendants therefore necessarily fall? The answer must be in the negative.

In Underhill's Criminal Evidence ([4th ed.], § 629, p. 1219) we find the following: " The identity of articles taken in burglary may be proved by circumstantial evidence, but the identity should be established beyond a reasonable doubt." If proof, therefore, as to identification is sufficient, the conviction rests upon firm legal ground.

As to the defendant Zoldek, the objections raised by him merit little consideration. The two razor blade packages with portions of the cardboard torn from the display card still attached thereto and the slab of cardboard found in Zoldek's jacket all fit perfectly into the torn places of the display card aforesaid. The jury was thus warranted in finding that these articles found in Zoldek's possession were stolen from Mr. Friedman's establishment during the burglary. Also of great significance was the presence of plaster dust on his clothing and the fact that shortly before the burglary was discovered he was seen within a few feet of the drugstore.

The case against Schwab, however, presents a more complex problem. The articles found in his possession bore no distinguishing marks. An accused who is found in possession of standard-brand articles which were not distinguishable one from the other should not be found guilty where the case against him rests solely upon such possession. However, the jury was warranted in considering circumstances proved by the evidence which unerringly lead to the identification of the articles as the fruits of the crime. In Schwab's case, the jury was justified in considering the following questions: Is it mere coincidence that several packages of tooth paste, dental cream, and playing cards of the particular brands named were all found in a garbage pail in the bathroom? Is it mere coincidence that in Schwab's overcoat pocket were a package of dental cream and a carton containing several packages of " Gillette " razor blades? Is it mere coincidence that shortly before the burglary was discovered he was in the company of the Brostowicz woman and his codefendant within a few feet of the drugstore? Is it just a fortuitous circumstance that shortly after the arrival of the police officer he was seen running from the vicinity? Did it just happen by mere chance that his

clothing was spotted with plaster dust? It is apparent that one of these circumstances so established may not be sufficient to prove identification, for one circumstance, like a single cord, may be insufficient to sustain the weight of the burden imposed upon the prosecution, namely, to prove each element of guilt beyond a reasonable doubt; but when the circumstances are multiplied like so many single strands of cord woven into a rope, they may be sufficient to remove every reasonable hypothesis of innocence and lead inexorably to the conclusion of guilt. As stated in *People* v. *Razezicz* (206 N. Y. 249, 273): '' In a criminal case circumstantial evidence to justify the inference of guilt must exclude to a moral certainty every other reasonable hypothesis.'' In the instant case, the accumulated circumstances relating to each defendant are, to a reasonable mind, consistent only with the hypothesis of guilt.

Little has been written by the courts of this State upon the subject of identification of alleged stolen articles. The court has found but one reported case which treats generally with this subject, viz., *People* v. *Connor* (68 Hun 78, affd. on opinion below 141 N. Y. 583), which reads in part as follows: '' The only weak point that is claimed exists in the evidence is, that no person saw the boxes. This is not a fatal objection. The identity of many articles can be as certainly acquired by the sense of touch as by sight. The shape, size, weight and covering of cigar boxes are matters well known to ordinary observers, and a person familiar with cigars and cigar boxes would have little difficulty in determining by the sense of touch whether they contained cigars. The remark of the witness that they might have been chalk boxes, is not entitled to much consideration, as the difference between the specific gravity of chalk and cigars is very apparent. The identification would have been more perfect had the witness seen the boxes, opened them, smelled and tasted the contents. But the evidence given was competent, relevant, and in connection with the defendant's conduct, his subsequent prevarication and all of the circumstances were sufficient to support the finding of the jury that the contents of the bag were the fruits of the burglary and larceny. Perfect identification is seldom possible of goods sold by count, weight or measure, and impossible in the case of perfect coins or bank notes. Had a bank been robbed of coin in bags, and they had been put in a sack, the testimony of a bank employee, familiar with such bags, that he handled them, but did not see them and that they were bags of coin, would be competent.''

In *The People* v. *Rembowicz* (335 Ill. 604) we find a set of facts almost analogous to those at bar. There, a drugstore was burglarized sometime after midnight on a Saturday night. It was discovered around five o'clock on Sunday morning. The cash register was empty. It had contained about eight dollars and fifty cents in change, including a roll of fifty pennies wrapped in a bank wrapper. The bank wrapper contained no identification marks. The place had been burglarized by means of a window in a side entrance being knocked out and some of the bottles of medicine on the shelf were thrown on the floor and smashed. Some white powder was scattered on the floor and the cash register was left open. A milkman went by the drugstore at about five o'clock and saw one man hand something from the store to another and immediately notified the police. When he returned with the police in a police car, an automobile which was parked near the drugstore had just started away. The police followed the automobile and overtook it some blocks away. They found four men in the car, two of whom the milkman attempted to identify despite the darkness. However, in the car was found a great quantity of cigarettes and a roll of fifty pennies wrapped in the bank paper. The question was raised on appeal that the property was not sufficiently identified as having come from the drugstore. The court believed that the identification was sufficient in view of the other circumstances in the case, despite the fact that each of the defendants had offered a perfect alibi as to where he was at the time the crime was committed. The court said in the *Rembowicz* case (*supra*): "A roll containing fifty pennies, just like the one that was stolen from the drug store, was found in the burglars' car after the defendants were removed from the car, and no one in that car when it was overtaken by the police claimed to be the owner of that roll or gave any satisfactory explanation of the fact that it was in the car. Several dollars in change, just like the money that was stolen from the cash register in the store, were taken from the pockets of Rembowicz when he was searched by the officers. These three severally described articles are the ones admitted in evidence. It is true that no one of the three exhibits was shown to be the identical articles that were stolen. Manifestly they could not be so identified. They are all of a character of property that cannot be ordinarily identified unless they happen to bear some mark or designation not peculiarly belonging to such property generally. Cotter, the owner of the drug store and of the personal property therein and therefrom stolen,

could not identify the several exhibits as made up of the identical articles stolen from this store, and if he had done so it would have greatly weakened his evidence unless he could show markings or characteristics of that property that enabled him to so identify it. He did the next best thing he could do for the State, and that was to testify that all the articles were like the articles that were stolen from him, and in view of the other proof in this record the State was entitled to introduce such evidence.''

In *Shewitz* v. *United States* (293 F. 581) Shewitz was convicted of receiving stolen goods, consisting of copper and brass castings which were the property of the United States Government. He was charged with having purchased the same from employees of a mill in Detroit. An objection was made that the particular copper and brass castings were not properly identified. The court said at page 582: '' Regardless of the fact that these officers could not testify positively as to the identity of these pieces produced * * * further than that they were similar in appearance, the proof as to their identity was sufficient to authorize their admission in evidence.''

The court finds that the evidence in this case is sufficient to sustain the jury's verdict as to each of the defendants. The motion to set aside the verdict is therefore denied.