People of the State of Illinois, Plaintiff-Appellee, v. Samuel Lee House and Burrell Caston, Junior, Defendants-Appellants.

Gen. No. 50,257.

First District, First Division.

February 18, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendants, Samuel Lee House and Burrell Caston, Jr., were convicted in a bench trial of armed robbery and sentenced to the Illinois State Penitentiary for a term of three to ten years and two to ten years respectively. The reasons given for this appeal are that defendants were not found guilty beyond a reasonable doubt and that they did not receive a fair trial because hearsay testimony was admitted during the trial which was especially prejudicial in view of the fact that the declarant was no longer available for cross-examination.

From the record, we find the evidence was as follows: Police officer Reed testified that on May 4, 1964 he and his partner were patrolling, in a police car, the vicinity of 1542 East Marquette Road in Chicago. They observed a cab in the middle of the street facing toward them and when they drew close, the cabdriver yelled: "Help, help, they robbed me." They came abreast of the cab and both officers jumped out of their car. Defendant Caston took off around the front of the cab into a yard at 1542 East Marquette. Defendant House was holding the driver around the neck. Reed took after Caston and, upon apprehending him, brought him back to the cab.

His fellow officer was holding a tile or linoleum knife with a curved end in his hand. The driver was bleeding and "he was hollering 'They robbed me, they're trying to kill me.' " When Reed's partner asked what was going on, the driver said "They're trying to rob me." The driver then pointed to Caston saying that he had $2.40 in his pocket. Reed found $2.40 in Caston's possession. At that time Caston stated that he wasn't trying to rob the driver but that he was taking the money "they paid him." He accused the driver of being drunk and acting crazy. At the police station about an hour or hour and a half later, when questioned in the presence of the defendants, the driver said he picked up Caston and House at 63rd and Cottage Grove Avenue. They asked to be driven to 59th and Greenwood and when arriving there directed him to take them to "66th and Marquette." After arriving "there" he was told to drive a little "piece" down the street to a driveway where they started to rob him. At the station Reed said the defendants again charged the driver with being drunk and said they had just got in his cab and "was fixing to pay him to get out." The driver suffered a laceration over the left eye and on the neck. When asked whether the driver told how much money was taken from him, Reed answered that he said $2.40 and that that amount was recovered from Caston's pocket. On cross-examination Reed was asked whether he knew if the cabdriver had any more money on his person besides the $2.40. Reed said the driver had some money in his shoe and some in a little pocket "because he stated he had been stuck up seven or eight times." The driver died of a heart attack prior to the trial and Reed's partner was on vacation and unavailable at the trial.

Caston, in defense, testified that he and House got into the cab at 51st and Cottage streets, directed the driver to take them to 1520 East 66th Street [also known as

Marquette Road] ; that when they approached the corner of 66th and Stony Island the driver became suspicious and stopped and asked for $1.50 fare; that he gave the driver $2 and when he discovered that they were not at their destination, demanded the money back; that the driver got out of the cab, fell, got to his feet; that he lost his temper, grabbed the driver "to give me my money back and he [the driver] slapped House and hit the corner of that car. . . ." When Caston told him to give him back his money, the driver started fighting and "he throwed the money on the seat and I picked it up." The police car pulled up. The driver kicked the door and yelled "Help, they trying to rob me." He had no intention of robbing the driver. House testified the same as Caston with regard to the entering of the cab and the place of destination. He further said that when we were "pretty close" to the address he "raised up the seat, the back of the seat." The cabdriver got "all nervous" and told him to get back in his seat. House was only trying to locate the address. The driver then stopped, wouldn't go any farther, ordered them out of the cab and wanted Caston to pay the fare. Caston paid him $2. The driver and Caston got into an argument and scuffle. "I mean it was a regular riffing there and so I didn't know what was going on and so I just put the knife on his neck like that." He wasn't trying to hurt him. He was trying to keep them from hurting each other. The officers then pulled up. It was after defendants were insisting upon the money being returned, since the driver wasn't taking them to their destination, that House guessed that the driver must have dropped the money on the seat and Caston stooped down and picked it up. When asked whether the driver dropped any more than the fare, House said that he might have in the scuffle. He said there couldn't have been too much [more than the fare] "because we didn't have any more." He had no intention

■■■■■■■■

to rob the cabdriver. On cross-examination House said he had put the knife to the driver's neck while in the cab and when arrested he was outside the cab. The knife was recovered under the cab where he threw it. He was familiar with the neighborhood and lived a block away from where the cab was stopped.

■ Initially, we pass upon the defendants' contention that the proof failed to establish their guilt of armed robbery beyond a reasonable doubt. In People v. Griffin, 48 Ill App2d 148, 153, 198 NE2d 115, 117 (1964) we cited cases and expressed the principle that a reviewing court will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilty unless there is a reasonable and well founded doubt of the guilt of the accused and the finding is palpably contrary to the weight of the evidence. We also said that the credibility and weight to be given to the testimony is a question for the trial court, and this court will not substitute its judgment for that of the trial court. The trial judge heard the testimony, saw the witnesses, observed their demeanor on the stand, and was in a better position than this court to determine the weight and credibility to be given to the testimony. Furthermore, the undisputed facts are that defendants hired a cab to be driven to a destination not the home of either, yet one block from where House lived; that they were involved in a quarrel with the driver and, although they claimed originally to have had $2, $2.40 was admittedly found in Caston's pocket; that the cabdriver knew the exact amount taken; that the money passed after House had placed a linoleum knife against the driver's head and held him by the neck; that the cabdriver yelled for help saying he was being robbed; that Caston took off at the approach of the police and House threw the knife under the cab; and that the driver suffered lacerations on the head and neck. The defendants'

versions were somewhat contradictory and the court did not accept them. There is no question that the victim gave up money if not through force then to say the least, by the threat of imminent use of force. (Ill Rev Stats 1965, c 38, § 18–1.) The finding of guilty was not so unreasonable and palpably contrary to the weight of the evidence as to justify a reversal on those grounds.

■ Defendants further seek a reversal alleging that they did not receive a fair trial in that hearsay testimony was admitted. First, they say, the court erred in allowing officer Reed to testify to the cabdriver's declarations on the scene although the charges were denied by the defendants. They say these were hearsay and inadmissible especially in view of the fact that the accuser did not and could not testify. We believe People v. Poland, 22 Ill2d 175, 180, 181, 174 NE2d 804 (1961) disposes of this issue. The court held that there has emerged, as a recognized exception to the hearsay rule, the principle that, under certain conditions, what have been variously characterized as "spontaneous declarations" or "excited utterances" are properly admissible. The court cited 6 Wigmore, Evidence, 3d Ed, sec 1747 and accepted the following quotation from Showalter v. Western Pac. R. Co., 16 Cal2d 460, 106 P2d 895, 899: "When a declaration is made under the immediate influence of the occurrence to which it relates and so near in time as to negative any probability of fabrication, said declaration is admissible." Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. People v. Poland, p 181. These requirements were fully satisfied regarding these statements of the victim at the scene and the time of arrest and the court did not err in admitting them.

329

The defendants' contention that the statement made by the victim some one hour to one hour and a half later at the station, and which accusatory part thereof was denied by the defendants, does not, in our opinion, fall within the above stated exception. But we do not believe the defendants were prejudiced thereby. As we point out, the undisputed facts and the testimony exclusive of the victim's statement at the station is sufficient to sustain the trial court's finding of guilty. And as it has often been held, where the court is the trier of the facts, we must presume that the court considered only competent evidence in reaching its decision. People v. Cox, 22 Ill2d 534, 539, 177 NE2d 211 (1961). It is only when the record affirmatively indicates that the trial judge considered incompetent evidence prejudicial to the defendant that we will reverse. People v. Grodkiewicz, 16 Ill2d 192, 200, 157 NE2d 16 (1959); People v. Smith, 55 Ill App2d 480, 488, 204 NE2d 577 (1965).

The judgment of conviction is therefore affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.