People of the State of Illinois, Defendant in Error, v. William James Griffin, Impleaded, Plaintiff in Error.

**Gen. No. 49,497.**

First District, First Division.
April 13, 1964.
Supplemental opinion, May 11, 1964.
Rehearing denied May 11, 1964.

Thomas J. Maloney and Richard H. Devine, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, with Bernard Joseph Boliaux, was tried by the court on a charge of burglary and found guilty. From this finding he appeals. He contends that the court admitted improper and prejudicial testimony and that the proof was not sufficient to justify a finding of guilty.

Louis Price, the manager of the laundry, on Saturday, June 10, 1962 at 4:00 p. m., locked the front door, returned about midnight to check up and upon opening the door noticed papers scattered over the front office. He heard a banging noise from the plant further in so he went out, locking the front door. As

he went down the street he saw a police car from the canine corps. He had them follow him back to the place where he stayed until about 2:30 a. m. At that time he saw the defendant and Boliaux in front of the laundry being searched by the police. He had previously shown the police around inside the laundry. He had contacted Mrs. Stolarz, the cashier. He identified a slip of paper containing the words "$35, Louis." This indicated that he had taken out three tens and five singles from the cash register after Mrs. Stolarz had checked the receipts earlier that day. The receipts were in an envelope. He saw both the note and envelope a few days later.

The Pilgrim Laundry building was a one-story building with a small wooden structure atop part of the roof. Immediately north was the Superb Cleaners building, almost a full story higher than the Pilgrim building. The third building, separated from Superb Cleaners by a passageway, was a one-story building occupied by a restaurant. The fourth was a three-story building containing the Atlas Silk Screen Company at 1733 Milwaukee Avenue.

Ann Stolarz, bookkeeper and cashier, worked Saturday until 4:00 p. m. Before leaving she prepared a list of currency derived from payment of laundry accounts and placed them in an envelope. (The one identified by Price.) The currency consisted of three $10 bills, twenty $5 bills, thirty-four $1 bills, and fifteen cents in coins, a total of $164.15. Before she left, Price removed three $10 bills and five $1 bills, a total of $35 from the envelope. Price then placed the note in the envelope. She saw the envelope with fifteen cents on the desk on Monday. The slip of paper or note was on the floor near the basket.

Officer Cy Martin testified that he works with a German shepherd dog. In the early morning of June 10, Price approached him, and he went to the laundry

150

where Price let him in the front door. His partner went to the alley. He did not search the plant but after officers Walchuk and Carroll arrived, placed his dog in the squad car and waited outside for about one hour and forty-five minutes before he heard the call "I have got them." Meanwhile, Walchuk and Carroll, each with his German shepherd dog, entered the laundry plant around 12:15 a. m. and examined the premises. Two vending machines were discovered in a disturbed condition, with coins nearby on the floor. Walchuk unleashed his dog and ordered him to "find him." The dog ran to the center of the building. Walchuk kept repeating "find him." The dog turned and ran toward the rear of the building, where the dog came to a ladder that led to a loft. Above the loft was an opened skylight. After observing that, Walchuk and his partner Carroll searched the rest of the building. He then took his dog into the alley to the northwest corner where the laundry meets another building, the cleaning establishment. The dog was on a leash. He then went through a yard to a fire escape off 1733 Milwaukee Avenue, tied up the dog and went up the fire escape to the roof. It was a flat roof with a structure housing elevator machinery. Upon looking inside he saw the defendant and Boliaux both shabbily dressed and both wearing gloves. They were placed under arrest. He ordered them down the fire escape to the officers below. He found one pair of the gloves on the roof and the other in the corner of the elevator structure. Defendant and Boliaux were handcuffed by officers Martin and Carroll and taken to the Milwaukee Avenue side of the laundry. Martin felt something in defendant's pocket, asked him how much he had there and defendant said he didn't know. A search disclosed twenty $5 bills and forty $1 bills (a total of $140). In the meantime officer Carroll removed one $20 bill, four $10 bills, one $5 bill and two $1 bills (a

151

total of $67) from one pocket of Boliaux. While removing a $20 bill from the other front pocket Boliaux said "Hey, that belongs to me." A wallet without any money was also found on Boliaux. At the police station, officer Cutaia talked to the defendant who said he met Boliaux at Western and Belmont and they proceeded to the vicinity of the arrest where they were to meet two women. While walking on the street they had to urinate and went in the alley behind the laundry. A dog approached them viciously growling and they ran for safety and stayed in the elevator structure until the police arrived. Defendant told him they got there on a bus or streetcar. He did not exactly remember how they got there because they had been drinking. He was slow and stammering and not quick in his replies. Officer Cutaia then went to the vicinity of the laundry and saw a 1953 Oldsmobile sedan. He had a set of keys recovered from the defendant and with them "started the car and opened the trunk."

Defendant contends that the court allowed testimony of the actions of the dog over his objections which was prejudicial and improper. Although the court overruled defendant's objection at the time Walchuk testified of the actions of the dog, the court subsequently and before cross-examination, reversed his ruling and struck out the questioned evidence and later references to canine activity were suppressed, the court remarking:

"Now, this case is not complicated, if you leave the dogs out. The officers did nothing here a good officer wouldn't do if he had a dog along or not."

Reliance is had on the case of People v. Pfanschmidt, 262 Ill 411, 104 NE 804 (1914). In that case, the following of a trail by a bloodhound, leading to circum-

stantial evidence against the defendant, was held erroneous. The court stated on page 461: "We have reached the conclusion that testimony as to the trailing of either a man or an animal by a bloodhound should never be admitted in evidence in any case. . . . His guilt or innocence of a given crime, however, should be established by other evidence."

In the cause before us the court acted properly. Since the case was tried by the court, there is a presumption that he considered only competent evidence in reaching his decision. People v. Richardson, 17 Ill2d 253, 261, 161 NE2d 268 (1959); People v. Grabowski, 12 Ill2d 462, 467, 147 NE2d 49 (1957); People v. Knapp, 15 Ill2d 450, 455, 155 NE2d 565 (1959).

Defendant, next, contends that the evidence was insufficient to support a guilty finding. This court will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilty unless there is a reasonable and well founded doubt of the guilt of the accused and the finding is palpably contrary to the weight of the evidence. People v. Lobb, 17 Ill2d 287, 294, 161 NE2d 325 (1959); People v. Prohaska, 8 Ill2d 579, 589, 134 NE2d 799 (1957). The credibility and weight to be given to the testimony is a question for the trial court, and this court will not substitute its judgment for that of the trial court. People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631 (1964); People v. McCreary, 29 Ill2d 295, 194 NE2d 233 (1964); People v. Dillon, 24 Ill2d 122, 180 NE2d 503 (1962); People v. Hayes, 20 Ill2d 319 323, 169 NE2d 760 (1960).

The indictment charged defendant and Boliaux with having committed the offense of burglary on June 10, 1962 in that they, without authority, knowingly entered a building, to wit: the laundry of Pilgrim Laundry, Inc., a corporation, with the intent to commit therein, a theft. Although the evidence is circum-

153

stantial, it was clearly established that the laundry was entered into and a theft committed. An envelope containing twenty $5 bills, twenty $1 bills and fifteen cents in coins was taken from a drawer. The police officers observed two vending machines tampered with and coins spread on the floor. There was a ladder leading to a loft and the skylight was open. The defendant and his associate were discovered hiding a short distance away in an elevator structure at about 2:00 a. m. It was in the province of the trial court to accept or disbelieve defendant's explanation for his presence there. The denominations of the money found in defendant's possession closely corresponded to that missing from the burglarized premises. Far from explaining his custody of like denominations of currency removed from a nearby building less than two hours previously, he could not estimate the amount. In People v. Rogers, 16 Ill2d 175 (1959) the court said at p 180, 157 NE2d 28 (1959): "We have recognized that some property is of such a character that it cannot be positively identified, and in such a case we have held it sufficient where the owner testified that articles found in the possession of the defendant are identical to those stolen, without positive testimony that they are in fact the property from whom they were taken. (People v. Rembowicz, 335 Ill 604, 167 NE 797 (1929); People v. Penn, 340 Ill 535, 173 NE 86 (1930))." While the unidentified articles found in the possession of the defendant consist of money in denominations closely corresponding to the money stolen, the mere fact of discovery contains probative value that the two groups of money are identical, apart from any showing of prior impecuniosity. (Cf. State v. Lavalle, 122 Vt 75, 163 A2d 856, 861 (1960); State v. Board, 135 Mont 139, 337 P2d 924, 928 (1959); 1 Wigmore on Evidence, 3d Ed 1940, sec 154.) When such identity is not contradicted, it becomes an even

more natural and prominent hypothesis. Evidence of recent possession of stolen property is evidence of guilt sufficient to warrant a conviction unless such possession is explained. People v. Woods, 26 Ill2d 557, 562, 188 NE2d 1 (1963); People v. Rogers, 16 Ill2d 175, 157 NE2d 28 (1959); People v. Bennett, 3 Ill2d 357, 121 NE2d 595 (1955). In the most recent case, People v. Sellers, 30 Ill2d 221, 196 NE2d 481, decided January 1964, the property consisted of three boxes of cigars and a roll of pennies. The prosecuting witness "guessed" that he had some rolls of pennies in the cash drawer (entered into) but did not remember what brands of cigars had been taken. These were received in evidence. The court held, page 224: "The items in question however, were the kind of property that is devoid of distinctive features that would enable it to be readily identified. (See People v. Weaver, 18 Ill2d 108, 113, 163 NE2d 483 (1959); People v. Rembowicz, 335 Ill 604, 614, 167 NE 797 (1929).) They were found in defendant's possession immediately after the crime was committed and in our opinion the court did not err in admitting them in evidence."

██ In addition to this proof there was the possession by defendant on his person of keys that fit an automobile parked near the burglarized premises and the fact that he told the police he arrived in the vicinity by bus or streetcar. These were incriminating admissions, allowing an inference of guilt. People v. Richardson, 21 Ill2d 435, 439, 172 NE2d 801 (1961).

██ Defendant finally contends that no evidence was offered that Pilgrim Laundry, Inc. was the owner of the money, and this must be proven beyond a reasonable doubt, citing People v. Walker, 7 Ill2d 158, 161, 130 NE2d (1955). The testimony indicated that the money was proceeds of the accounts of Pilgrim Laundry, Inc. checked and registered by its bookkeeper and cashier and reposed in the corporation's

property, a desk. The natural and logical inference, permissible to the trier of the facts, is that it was the property or at least, in the custody of the owner of the premises burglarized. But once the use and occupation of the premises is proved, it becomes immaterial who was the actual owner. The statute under the new Criminal Code of 1961 defines burglary as follows:

> "Ch 38. 19–1. A person commits burglary when, without authority, he knowingly enters into . . . a building . . . with intent to commit therein a felony or theft.

> "Ch 38. 16–1. A person commits theft when he knowingly obtains or exerts unauthorized control over property of the owner.

> "Ch 38. 15–2. Owner means a person, other than the offender, who has possession of or any other interest in the property involved.

> "Ch 38. 15–8. . . . the phrase 'obtains or exerts control' over property includes but is not limited to the taking, carrying away . . . or possession of property."

In People v. Figgers, 23 Ill2d 516, 519, 179 NE2d 626 (1962) the court held that the crime of burglary is complete upon the breaking and entering with intent to steal, and it is not essential to allege or prove that anything was taken. The court then continued with: "the allegations that property of Western Medical was stolen were not material to the charge of burglary and may be treated as surplusage. . . . The further contention of defendant that the prosecution failed to prove an intent to steal the property of Western Medical finds its answer in the recent case of People v. Johnson, 20 Ill2d 336, 169 NE2d 776. The evidence here, as in the cited case, shows that defend-

156

ant intended to steal anything of value he could find in the building and common office, and that he was not concerned with the niceties of legal title as between Western Medical and Xttrium." People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631 (1964); People v. Stewart, 23 Ill2d 161, 168, 177 NE2d 237 (1962).

In another recent case, People v. Foster, 30 Ill2d 106, 195 NE2d 700 decided in January 1964, the court therein held that a variance as to the ownership of the property (taken) and the value thereof is not material in a burglary prosecution, citing the Figgers case.

We cannot say as a matter of law that the evidence here is insufficient to support the conviction of the defendant. The judgment of the Criminal Court is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.

### Supplemental Opinion

Defendant's petition for rehearing says: "The Plaintiff in Error raises for the first time in the reviewing court that the indictment for burglary is defective in failing to allege the address of the building burglarized, to wit: a laundry of the Pilgrim Laundry, Inc., a corporation. A motion to arrest judgment was denied."

This point is raised for the first time in the petition for rehearing. It is not included as a reason for reversal among the Points and Authorities in defendant's brief.

Our Appellate Court Rule 5(k) adopts Rule 39 of the Supreme Court which in Part IV, 2nd paragraph reads as follows:

157

"No alleged error or point not contained in the brief shall be raised afterwards, either by reply brief or in oral or printed argument, or on petition for rehearing."

Because of this the point will not be reviewed. It is the only ground raised in the petition for rehearing. Therefore, the petition for rehearing is denied.