THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MASIEO L. RICHMOND, Defendant-Appellant.

Fourth District   No. 4—89—0323

Opinion filed August 16, 1990.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle,

Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Masieo L. Richmond was found guilty of the offense of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1) after a jury trial in the circuit court of Macon County. Subsequently he was sentenced to a 50-year term of imprisonment. He appeals, contending (1) the prosecution deliberately elicited testimony that the defendant requested an attorney immediately upon learning of the victim's death; (2) the prosecution improperly introduced testimony of other crimes; and (3) the court improperly restricted cross-examination of a key prosecution witness and refused to permit an offer of proof relating to that cross-examination.

The State's case consisted of the testimony of 32 witnesses, stipulations, and exhibits. The evidence clearly established that Patsy Rosich, a 5-foot 4-inch, 120-pound female, was murdered by the infliction of a severe beating to her head. The medical evidence was unrefuted and, while Patsy was epileptic, the severe injuries to her head, in absence of other serious bruises to her body, could not have been caused by falling downstairs. The evidence establishes the beating which resulted in her death was administered in her apartment sometime between 8 and 9 p.m. on November 1, 1988. Witnesses established defendant was in the hall near Patsy's apartment at about 8 p.m. Several witnesses heard an altercation soon after defendant was seen in the hall, and three witnesses watched as Patsy, during the altercation, tried to crawl out of her apartment, only to be snatched back by someone pulling her legs. Prior to being snatched back into the apartment, a voice from the apartment said, "Come on, baby, come back." Silence then returned to the apartment. The onlookers did nothing. (So much for mankind.)

No one saw the defendant enter or leave Patsy's apartment during the evening of November 1, 1988. No one else, including Patsy, was seen coming or going from Patsy's apartment after the altercation. However, defendant entered the apartment on the morning of November 2, 1988. He then went across the street in a nervous state at about 9:30 a.m., called James (Sonny) Powell to say he had an emergency, and asked him to bring a car to Patsy's apartment building. Sonny arrived at the apartment building. The defendant carried Patsy to the car and, together with Sonny, took her to Decatur Memorial Hospital (DMH).

Life-support systems were attached to Patsy. Defendant, who

gave the DMH staff registration information, was taken into a separate room where he lay down and had his blood pressure checked. He provided the hospital with a false name. In the nurse's absence, the defendant left without telling the DMH staff. He had reported to DMH that Patsy had a seizure and he found her "that way this morning."

On November 3, 1988, after it had been determined that Patsy was brain dead, life-support systems were removed and she was pronounced dead.

Patsy had a history of epilepsy, and Dilantin and phenobarbital had been prescribed for her condition. Traces of both drugs were found in her system during her hospital treatment and by the pathologist. The autopsy, in addition to the head wounds, indicated at least two patches of her hair were missing. Hair of the same type, with roots still attached, was found both in her apartment and on the jacket the defendant was wearing the night of November 1, 1988. The cause of death was brain swelling due to closed-head trauma, which was caused by a blunt-impact injury.

Police testimony established that defendant gave conflicting statements as to his whereabouts on the evening of November 1, 1988, eventually admitting that he had been on the stairs of Patsy's apartment building and that he knew her. In the spring of 1988, a protection order had been entered prohibiting him from abusing her.

Witness Susan Harrison was allowed to testify, over objection, that in the summer of 1988 she saw the defendant slap Patsy in the face, kick her, and pull her hair. Harrison also testified that in early November 1988, after Patsy was hospitalized, she heard the defendant say, in discussing Patsy, he had "just stomped the shit out of the bitch and took her to the hospital."

I

Defendant's first alleged error arises from the following testimony of police officer Brian Bell. The testimony took place during the State's examination of Officer Bell:

"Q. [Prosecutor]: How long did this interview take place—take?

A. A little over an hour.

Q. And was there a specific occasion that resulted in the conversation ending?

A. Yes, sir. Mr. Richmond advised me that he no longer wanted to make any statements; that he wanted to consult with an attorney.

Q. And was any information brought to his attention before he made that statement to you?

[Defense Counsel]: Object. Relevance.

THE COURT: What was the last question? I didn't even hear the question.

Q. [Prosecutor]: Was any information given to Mr. Richmond before he made that statement?

THE COURT: Sustained. I don't understand the question.

Q. [Prosecutor]: Do you recall anything else that happened during the interview?

A. Yes, sir. I had left the interview room for a very short period of time and I returned and at that time I had been advised that Patsy Rosich had passed away. I advised Mr. Richmond of that fact and continued to interview him for, I believe, less than ten minutes, and he told me that he wanted to speak to an attorney."

Defendant contends introduction of the post-arrest silence violates due process (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240), and further claims it is a constitutional violation because it violates defendant's fifth amendment rights and penalizes the defendant for exercising those rights (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229).

In *Doyle*, defendants were charged with a marijuana sale and early on exercised their right to remain silent. At separate trials, the defendants came up with an exculpatory story and, over objection, the prosecution was allowed to cross-examine them about why they did not tell this story when arrested. The *Doyle* majority opinion stated:

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment. The State has not claimed that such use in the circumstances of this case might have been harmless error. Accordingly, petitioners' convictions are reversed and their causes remanded to the state courts for further proceedings not inconsistent with this opinion." *Doyle*, 426 U.S. at 619-20, 49 L. Ed. 2d at 98-99, 96 S. Ct. at 2245-46.

In *Griffin*, the charge was murder in the first degree, and the defendant did not testify. California provided, by statute, the right to comment about the failure to testify. After considering various reasons why a defendant might elect not to testify, the Supreme Court said:

"[We] hold that the Fifth Amendment, in its direct application

to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin*, 380 U.S. at 615, 14 L. Ed. 2d at 110, 85 S. Ct. at 1233.

In *People v. Kennedy* (1975), 33 Ill. App. 3d 857, 338 N.E.2d 414, this court reversed a conviction, where the State repeatedly inquired about, and then argued in reference to, defendant's request for an attorney after refusing to allow the recording of his voice. The recording was to be used to determine whether defendant had made phone calls to give bomb warnings. The refusal to give a voice sample was treated as a determination to remain silent. The State's questioning and comments about these matters were, in that context, treated as plain error.

■ Initially, we observe defendant did not object at trial, nor did he include this allegation of error in his post-trial motion. Both the trial court objection and the written post-trial motion raising the issue are required to preserve allegations of error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Failure to do either constitutes waiver of the alleged error.

An exception to the waiver rule is contained in Rule 615(a) (107 Ill. 2d R. 615(a)), also known as the plain error rule, which provides that plain errors affecting substantial rights may be noticed even though they were not brought to the attention of the trial court. The plain error rule is a limited exception to the waiver doctrine (*People v. Carlson* (1980), 79 Ill. 2d 564, 577-78, 404 N.E.2d 233, 239) and "does not mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court." (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 858.) Issues which were waived will be considered only if the evidence is closely balanced (*People v. Gacho* (1988), 122 Ill. 2d 221, 239, 522 N.E.2d 1146, 1155, *cert. denied* (1988), 488 U.S. 910, 102 L. Ed. 2d 252, 109 S. Ct. 264; *People v. Garcia* (1983), 97 Ill. 2d 58, 87, 454 N.E.2d 274, 286), or if the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial (*Carlson*, 79 Ill. 2d at 576-77, 404 N.E.2d at 238; *Pickett*, 54 Ill. 2d at 283, 296 N.E.2d at 858).

■ We find neither basis for invoking the exception applies. The facts in *Doyle*, *Griffin*, and *Kennedy* are far different than those now before this court. While the testimony of Officer Bell relating why defendant elected to terminate the inquiry was subject to objection

based upon constitutional grounds, the repetition and emphasis present in *Doyle, Griffin,* and *Kennedy* were not present here. Nor do we find the evidence, much of which we acknowledge is circumstantial, closely balanced. In making this determination, we recognize the defendant's presence at Patsy's apartment building on November 1, 1988, and on the morning of November 2, 1988, together with the trip to the hospital, was basically admitted by defendant in his statements and clearly established by other witnesses. Accordingly, we conclude any error in this regard is waived.

## II

■■■ Prior to trial, defendant filed a motion *in limine,* seeking to exclude certain evidence. The court denied the motion in part. Accordingly, the State introduced evidence that Patsy obtained an order of protection against defendant in May 1988, which would not expire until May 1989. The State also presented the testimony of Harrison concerning the physical abuse of Patsy by defendant in the summer of 1988. Defendant maintains this evidence was erroneously admitted, since its sole purpose was to show propensity to commit crime.

In *People v. Lucas* (1989), 132 Ill. 2d 399, 429, 548 N.E.2d 1003, 1015, the court explained:

"Generally, evidence of prior acts and offenses may not be introduced to show propensity to commit crime. (*People v. Bartall* (1983), 98 Ill. 2d 294, 309-10.) However, evidence of other crimes is admissible if it tends to prove *modus operandi,* design, motive or knowledge. (*People v. Shum* (1987), 117 Ill. 2d 317, 352; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 163 (4th ed. 1984).) In fact, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit crime. *People v. King* (1986), 109 Ill. 2d 514, 530; *People v. Dewey* (1969), 42 Ill. 2d 148, 157; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 163 (4th ed. 1984).

In the case before us, the defendant's involvement in the decedent's death was established by his own testimony. However, the defendant claimed that he did not have the intent to kill or cause great bodily harm to Danny. Evidence that the defendant was involved in prior incidents in which the decedent suffered similar injuries was admissible to show the presence of intent and the absence of accident. The evidence was relevant for a purpose other than to show the defendant's propensity to com-

mit crime, and was therefore admissible. See *McKibbins*, 96 Ill. 2d at 186; *Dewey*, 42 Ill. 2d at 157."

Earlier, the court stated:

"Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without such evidence. (See *People v. Johnson* (1986), 114 Ill. 2d 170, 193; *People v. Monroe* (1977), 66 Ill. 2d 317, 322 (adopting Fed. R. Evid. 401).) Evidence which tends to establish that the accused had a motive for killing the decedent is relevant, and if the evidence, at least to a slight degree, tends to establish the motive relied on, it is also competent. *Stewart*, 105 Ill. 2d at 56; *People v. Branion* (1970), 47 Ill. 2d 70, 77." *Lucas*, 132 Ill. 2d at 427, 548 N.E.2d at 1014.

Here, the evidence of the summer incident shows that defendant was seeking money from Patsy and that the defendant was pulling Patsy's hair during the incident. The trial evidence further shows that defendant explained to police that the reason he went to Patsy's apartment was to seek a loan of money, and that Patsy was having trouble coming up with the November rent. This evidence clearly goes to the question of the motive for the beating. Similarly, the autopsy evidence showed Patsy had hair pulled from her head during the murder. Thus, the questioned evidence also goes to establish *modus operandi*.

Evidence of other crimes has also been found admissible to demonstrate a defendant's dislike for, or attitude toward, the victim. (*People v. Crayton* (1988), 175 Ill. App. 3d 932, 946, 530 N.E.2d 651, 660.) This is applicable to the admission of the order of protection. Further, any error concerning its admission is harmless since the record already establishes by the above-mentioned testimony that there had been physical confrontations between Patsy and defendant before.

### III

Defendant's last contention relates to the trial court's restriction during the cross-examination of Susan Harrison. Harrison was the only witness to testify as to a statement from defendant admitting to the beating of Patsy. Harrison's testimony that defendant said he had "just stomped the shit out of the bitch and took her to the hospital" was the only evidence definitely putting the defendant in Patsy's apartment at the time of the beating. Other facts certainly indicated the likelihood of defendant being involved, but the conclusion of guilt based solely on the other evidence would be only by inference. The

other person allegedly present at the time of the statement, a friend of defendant's, testified he did not remember the incident.

The following took place during cross-examination of Harrison in an attempt to impeach her testimony:

> "Q. [Defense Counsel:] Are you doing this for crimestopper money?
>
> A. [Witness:] No.
>
> [Prosecutor]: Your Honor, I'm going to object to that question.
>
> A. [Witness:] No.
>
> [Defense Counsel]: You have been interested in crimestopper money in other cases, haven't you?
>
> [Prosecutor]: Object.
>
> THE COURT: Sustained as to crimestopper cases.
>
> [Defense Counsel]: I'm going to get into the interest or bias.
>
> THE COURT: The objection shall be sustained.
>
> [Defense Counsel]: Your Honor, may I make an offer of proof?
>
> THE COURT: No."

This testimony was the first that mentioned "crimestopper" money. Defendant argues that the limitation was an unconstitutional limitation of his right to confront the witness, and the denial of the right to make an offer of proof was reversible error. We first address the offer-of-proof issue.

■■ Trial courts are required to permit counsel to make offers of proof (*In re Estate of Undziakiewicz* (1964), 54 Ill. App. 2d 382, 385, 203 N.E.2d 434, 436), and a refusal to permit the offer is error (*In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 428, 539 N.E.2d 808, 811; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 166, 356 N.E.2d 164, 170; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 22 (5th ed. 1990)). (See, *e.g.*, *People v. Minnis* (1983), 118 Ill. App. 3d 345, 353-57, 455 N.E.2d 209, 215-18 (reversing and remanding for a new trial where court refused to permit offer of proof on applicability of battered woman syndrome to facts of case).) However, the refusal of the offer is not error if the suggested testimony is not relevant. *Strauss*, 183 Ill. App. 3d at 428, 539 N.E.2d at 811.

■ The witness' interest, including compensation for testimony, is properly subject to inquiry when seeking to impeach. (Ill. Rev. Stat. 1987, ch. 38, par. 155—1; *Chicago City Ry. Co. v. Carroll* (1903), 206 Ill. 318, 68 N.E. 1087; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.7, at 358 (5th ed. 1990).) We understand

"crimestopper" awards are given to those who assist in providing evidence in criminal cases. If Harrison was, or would be, paid for furnishing evidence against the defendant in this case, inquiry into such matters would be relevant and permissible. The witness' anticipation of possible compensation would also be of major interest in determining her interest in the outcome of the trial. Without further examination of the record, we would be required, in this case, to reverse because of the limitation on the cross-examination on the issue of payment and also find the court created reversible error by not allowing the offer of proof. However, additional testimony and the subsequent argument to the court require a different result.

Following the denial of the offer of proof, defense counsel continued with his cross-examination and the State then examined on redirect with the following taking place:

"Q. [Prosecutor:] Ms. Harrison, you are here today because of a subpoena that you received?

A. Yes.

Q. Is anyone paying you to testify?

A. No, they are not.

Q. Did anyone apply any threats or coercion to force you to testify?

A. No.

* * *

Q. [Prosecutor:] Did anyone tell you what to say today?

A. No, they didn't.

[Defense Counsel]: Objection.

THE COURT: She may respond to that question.

A. No, they didn't.

[Prosecutor]: Thank you. Nothing further."

On re-cross-examination, the following transpired:

"Q. [Defense Counsel:] You would like to get paid for it today?

[Prosecutor]: Objection, not relevant.

THE COURT: She may respond to the question.

A. No. Simply because I know Masieo and Pat both.

Q. Your car doesn't have much gas, right? You'd like to get paid for that, wouldn't you?

A. Well, I'd like to get paid for a lot of things, you know.

Q. You've come to Court several times, is that correct, last couple of days?

A. Well, I came on the first day and then I haven't been back until today.

Q. You'd like to get paid for your gas, is that right?

A. No. I would like to just leave and be home and be with my kids 'cause I've got two sick babies at home."

In addition, at the time defendant was to argue his motion for directed verdict at the close of the State's case, the following took place:

"THE COURT: Show, then, the People rest.

Show, then, the Written Motion for Directed Verdict at the Close of the State's Case. Any arguments or comments, Mr. Baxter?

[Defense Counsel]: Your Honor, I would just state that although I made an offer—I was going to make an offer of proof on Susan Beasley Harrison's—The question I asked her which was sustained over objection, I feel that I should have been allowed an offer of proof regarding her involvement or desire for crime stopper money. I state that because I had a conversation with her.

\* \* \*

[Defense Counsel]: I feel I should have been allowed to make an offer of proof because I had a conversation where she inquired to me that there was another case that she thought she was entitled to crime stopper money for and what she should do about it. Now, that was the sole purpose of me asking that question. There was objection made and it was sustained and it was for that basis that I felt that I should have been allowed to make an offer of proof on that point outside the presence of the jury. That's what I wanted to say for the basis of the record.

THE COURT: We'll show that representation. You were allowed to ask was she being offered any crime stoppers money in this case and I allowed her to respond. It's the position of the Court that what she's doing in another case does not relate here.

[Defense Counsel]: I just wanted to put that on the record."

We conclude from the redirect and re-cross, together with the representation at the time of the motion for directed verdict, that the defense's proposed inquiry related to prior criminal cases in which Harrison had been a witness or a proposed witness. We agree with the trial court that evidence of compensation paid a witness in prior cases has no relevance in the present case. If we were to rule to the contrary, it would appear that inquiry into the facts and background of the prior cases would be proper. Evidence is relevant if it tends to

prove a matter in controversy. (*Bullard v. Barnes* (1984) 102 Ill. 2d 505, 519, 468 N.E.2d 1228, 1235.) We conclude that Harrison's testimony in prior unrelated cases, and possible compensation therefore, is too remote to reliably act as impeachment in the present case.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.