THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
BENNY STEWART, Defendant-Appellee.

Fifth District   No. 5—91—0214

Opinion filed June 9, 1992.

RARICK, J., dissenting.

Paula Phillips, State's Attorney, of Effingham (Kenneth R. Boyle,
Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appel-
late Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Robert S. Burke, both of State Appellate De-
fender's Office, of Mt. Vernon, for appellee.

JUSTICE HARRISON delivered the opinion of the court:
The State appeals from an order granting defendant Benny
Stewart's motion *in limine* to bar statements or other evidence re-
garding the use of bloodhounds to follow a trail. The State argues
that the trial court erred in excluding the bloodhound evidence and al-
ternatively that the cause should be remanded to allow the State to
present an offer of proof as to the reliability of bloodhound evidence.

Before considering the propriety of the trial court's order, we must first address defendant's motion to strike the State's statement of facts. Defendant contends that the statement of facts must be stricken because the majority of facts reported therein are garnered from police reports which were never admitted into evidence. We decline to grant defendant's motion as the material was properly included in the record on appeal; however, we do not rely upon this evidence in our determination of the issues presented. *People v. Arkebauer* (1990), 198 Ill. App. 3d 470, 471, 555 N.E.2d 1162, 1163; *People v. Brackett* (1986), 144 Ill. App. 3d 442, 446, 494 N.E.2d 610, 613, *aff'd* (1987), 117 Ill. 2d 170, 510 N.E.2d 877.

In this case, defendant was charged with three counts of murder (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(a)(1), (a)(2)) in the death of his mother, Marilyn Stewart. At the preliminary hearing, Sergeant Mark Doris of the Illinois State Police testified, *inter alia*, that the deceased was found on the morning of September 11, 1990, near her automobile in a parking lot in Teutopolis, Illinois. A set of keys, identified as belonging to the deceased, was found a short distance from the body along a railroad track. On September 12, a bloodhound was brought in to pick up a trail at the location where the keys were found. Sergeant Doris stated that the dog was allowed to sniff a piece of sterile gauze which had earlier been placed on the passenger seat of the deceased's automobile. The dog followed the scent for a distance of approximately 10 miles to the adjacent residences of the deceased and defendant.

At the hearing on defendant's motion *in limine* to bar the presentation of bloodhound evidence to the jury, defendant argued that under the Illinois Supreme Court holding in *People v. Pfanschmidt* (1914), 262 Ill. 411, 104 N.E. 804, the bloodhound tracking of man or animal is inherently unreliable and that it is reversible error to admit that type of evidence in any case. Defense counsel further argued that "it is not possible to lay a foundation as to reliability or relevancy to admit [bloodhound evidence] because of the holding in *Pfanschmidt*." In response, the State argued that since the time of the *Pfanschmidt* opinion in 1914, there had been "major strides *** as far as training and the record keeping and so forth on bloodhounds," so that with adequate foundation the court could reasonably find the evidence admissible. In support of this argument, the State noted that bloodhound evidence had been presented to the jury in several recent murder cases and theorized that since the admissibility of such evidence had not been challenged on appeal, *Pfanschmidt* was no longer mandatory authority. The following exchange then occurred:

"[STATE'S ATTORNEY] PHILLIPS: I would also suggest to the Court that the dog and the dog handler that were involved in this case, that testimony was admitted in 1987 after adequate foundation was laid in the Fifth District Jefferson County case of the child Amy Schultz who was so brutally murdered, and the defendant in that case received the death penalty, and would even be willing at this time to make an offer of proof on that.

THE COURT: That was an appellate court case?

MS. PHILLIPS: It was—the issue was not, has not even been raised on appeal, but that evidence was allowed in in that case.

THE COURT: I am not concerned with what some Jefferson County Circuit Court Judge did with regard to that matter. That does not have anything to do by way of authority on the issue as it is raised in this court."

After further argument by counsel, this colloquy ensued:

"THE COURT: Let the record show that I have examined the Motion; I have reviewed the cited authority; and I find the following.

\* \* \*

The authority of the *People v. Pfanschmidt* has been reaffirmed in modern times, as recently as 1964 \*\*\*.

I am further convinced by the citation of the most recent edition of *The Trial Handbook of Illinois Lawyers—Criminal* that this evidence is simply not admissible in Illinois.

The Motion in Limine is allowed. All parties are prohibited from disclosing to the fact-finder the fact that any dogs were even employed in the investigation of this case as well, of course, of any results of the employment of any such animals.

MS. PHILLIPS: So it's this Court's position that even if we were to make an offer of proof as to the foundation your ruling would still be the same?

THE COURT: My ruling I have just made."

The State argues that it twice attempted to offer proof on the issue of the reliability of the bloodhound and handler used herein, and it contends that the trial court refused to allow the State to present its offer of proof. However, we believe that the record above shows that the State never offered proof of reliability and that the trial court never refused to allow such an offer of proof to be made part of the record for review.

■ Trial courts are required to permit counsel to make offers of proof, and a refusal to permit the offer is error. However, the court's refusal of the offer is not error if the suggested testimony is not relevant. (*People v. Richmond* (1990), 201 Ill. App. 3d 130, 137, 559 N.E.2d 302, 307.) Here, the State originally cited its willingness to offer proof that another circuit court had recently allowed the use of bloodhound evidence at trial. The court replied that it was not "concerned" with the actions of another circuit judge and that such an offer of proof would not be relevant "on the issue as it is raised in this court." Therefore, under *Richmond*, the court's refusal to hear this irrelevant testimony does not constitute error.

We agree with defendant that the State's second mention of an offer of proof was not made to preserve the question of the evidence's reliability for review but was a belated attempt to persuade the court to change its ruling. The State cites *People v. Minnis* (1983), 118 Ill. App. 3d 345, 455 N.E.2d 209, in which the reviewing court held that the trial court's refusal to permit an offer of proof on the applicability of the battered-woman syndrome to the facts of the case was reversible error. In the case at bar, unlike in *Minnis*, the trial court did not prevent an offer of proof from being placed in the record; the court merely stated that its ruling had been made. *Cf. Minnis*, 118 Ill. App. 3d at 354, 455 N.E.2d at 216.

In *People v. Reimolds* (1982), 92 Ill. 2d 101, 440 N.E.2d 872, the State appealed an adverse ruling by the trial court made at a hearing where the State presented no evidence and made no offer of proof. In denying the State's request to remand for a supplemental hearing, the Illinois Supreme Court stated that "[t]he parties involved in litigation must make their case at the appropriate time allowed in the trial court and must stand or fall on the record thus made." (*Reimolds*, 92 Ill. 2d at 108, 440 N.E.2d at 876.) Therefore, where the record herein does not show that the State was precluded from preserving for review the question of the reliability of its bloodhound evidence, and no offer of proof was ever made, "[t]o order another hearing at this point would only waste judicial resources and significantly dilute defendant's statutory protections and constitutional guarantees." *Reimolds*, 92 Ill. 2d at 108, 440 N.E.2d at 876.

■ The question remaining for review by this court is whether the trial court erred in ruling that, as a matter of law, evidence of bloodhound tracking could not be presented to the jury. We believe that no error occurred.

In *Pfanschmidt*, the Illinois Supreme Court thoroughly examined the treatment of bloodhound evidence and noted that in a majority of

the jurisdictions where the question had been raised it had been held "that when the proper foundation has been laid, the result of the trailing of a human being by a blood-hound from the place of the crime may be shown in evidence." (*Pfanschmidt*, 262 Ill. at 457, 104 N.E. at 822.) Nevertheless, the court expressly declined to follow this approach, stating:

> "[W]e have reached the conclusion that testimony as to the trailing of either a man or an animal by a blood-hound should never be admitted in evidence in any case. A blood-hound may be used to track down a known fugitive from justice. *** His guilt or innocence of a given crime, however, should be established by other evidence." (*Pfanschmidt*, 262 Ill. at 461-62, 104 N.E. at 823.)

The *Pfanschmidt* court based its rejection of bloodhound evidence not only on its fallibility and unreliability (262 Ill. at 462, 104 N.E. at 823), but also on the likelihood that such evidence would unduly influence juries:

> " 'It is well known that the exercise of a mysterious power not possessed by human beings begets in the minds of many people a superstitious awe ***. The very name by which the animal is called has a direct tendency to enhance the impressiveness of the performance ***.' " *Pfanschmidt*, 262 Ill. at 458, 104 N.E. at 822, quoting *Pedigo v. Commonwealth* (1898), 103 Ky. 41, 50, 44 S.W. 143, 145-46.

We believe the *Pfanschmidt* court's reasoning continues to apply today. As the trial court herein noted, *Pfanschmidt*'s statement of the law on bloodhound evidence was reaffirmed in the 1964 case *People v. Griffin* (1964), 48 Ill. App. 2d 148, 198 N.E.2d 115. Furthermore, where the supreme court has declared Illinois law on this point, that court alone can overrule and modify its previous opinion. The *Pfanschmidt* decision continues to be binding authority and thus it was the duty of the trial court, as it is our duty, to follow this decision in similar cases. See *People v. Palmer* (1986), 141 Ill. App. 3d 234, 238, 490 N.E.2d 154, 158.

For the foregoing reasons, the order of the circuit court of Effingham County is affirmed.


Affirmed.


H. LEWIS, J., concurs.

JUSTICE RARICK, dissenting:

Because I believe the trial court improperly denied the State the opportunity to make an offer of proof as to the reliability of bloodhound evidence, I must dissent. As the majority points out, it is error for the trial court to refuse to permit counsel to make an offer of proof. (See *People v. Eckert* (1990), 194 Ill. App. 3d 667, 675, 551 N.E.2d 820, 825; *In re Estate of Undziakiewicz* (1964), 54 Ill. App. 2d 382, 385, 203 N.E.2d 434, 436.) Contrary to the majority's view, however, I believe the suggested testimony was relevant. Notwithstanding the antiquity of *Pfanschmidt*, other jurisdictions have admitted bloodhound evidence. (See Annot., 18 A.L.R.3d 1221 (1968).) Moreover, the very issue is now pending before our supreme court. (See *People v. Cruz* (199___), ___ Ill. 2d ___.) The trial court should have at least permitted the State to present what it had before rejecting the evidence outright. (See *Eckert*, 194 Ill. App. 3d at 675, 551 N.E.2d at 825.) While I realize the State's choice of wording may not have been the best possible in this instance, the State's intent was more than clear. For these reasons, I dissent.