The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David James GILLIS, Defendant–Appellant.

No. 93CA0438.

Colorado Court of Appeals, Div. II.

May 5, 1994.

Rehearing Denied June 2, 1994.

Certiorari Denied Nov. 7, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Max I. Exline, Pueblo, for defendant-appellant.

Opinion by Judge KAPELKE.

Defendant, David James Gillis, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree burglary and conspiracy to commit second degree burglary. We affirm.

In February of 1992, defendant and the victim started a wood cutting business. The business used equipment owned by the victim and land leased by defendant, and it employed several people, including defendant's brother-in-law. When the relationship between defendant and the victim soured, the victim decided to get out of the business. He informed defendant's wife of his decision and told her he would pack his equipment into his camper trailer and leave.

On February 29, 1992, when defendant learned of the victim's plans, he and his brother-in-law agreed to break into the victim's trailer and take various items. That day, when the victim discovered that his trailer had been broken into and that a number of items, including two rifles, were missing, he notified the police of the burglary and informed them that he suspected that defendant was the culprit.

Based on that information, the police obtained a warrant to search defendant's residence, and three officers went to his home to execute the warrant. There, they knocked on the door, identified themselves, showed defendant the search warrant, and entered the house.

Knowing that rifles were among the items identified in the warrant, the officers, out of concern for their safety, initially conducted a brief security search of the house.

While one officer was conducting the security search, another officer showed defendant a copy of the search warrant. Defendant indicated that the address on the warrant was incorrect. The visual security search of the house was immediately terminated. No evidence was observed or seized during that search.

Still concerned about the possibility that the missing weapons might be in the house, the police told defendant and the other occupants of the house to remain outside until an amended warrant with the correct address was obtained.

A detective asked defendant if he would consent to a warrantless search. After consulting with his wife, defendant indicated that he would not consent. The police then told defendant and his wife that they would remain at the house until the warrant was amended and the search could be resumed. A few minutes later, defendant told the officers to "go ahead and search."

Before signing a consent to search form, defendant indicated that he understood he had a constitutional right to refuse permission for the search and that anything found could be used as evidence against him. According to the officers, defendant was not upset and did not appear to be under the influence of drugs or alcohol when he signed the form. The officers did not threaten or use any force or make any promises to secure defendant's consent. An officer advised defendant that he was not under arrest, that he was free to leave at any time, and that he did not have to answer any of the questions. Defendant indicated that he understood.

Defendant agreed to answer questions. An officer told him that if he would show the police where the victim's property was, "the process would go a lot faster." When defendant asked what would happen if he showed the police where the property was, the questioning officer indicated that it "would depend on the circumstances." Defendant began to cry, said to the officers, "It's been eating on my mind," and showed them where some of the stolen property was. While leading the officers to the contraband, defendant made some incriminating statements.

At that point, a detective asked defendant to go with him to the sheriff's office for an interview. He informed defendant that he did not have to go, that he was not under arrest, that he did not have to talk to the police if he did not want to, and that if he went with them, the police would take him home at any time. Defendant agreed to go.

When they arrived at the police station, defendant was again told that he did not have to answer any questions, that he was not under arrest, that he was free to leave at any time, and that he would be taken home upon request. After indicating that he understood and that he was willing to answer the officers' questions, defendant made a number of incriminating statements and admissions. At the conclusion of the interview, the police gave defendant a ride home.

Defendant was thereafter charged with and convicted of the offenses at issue here. Pursuant to a plea agreement, defendant's brother-in-law pled guilty to conspiracy to commit burglary, received a three-year sentence, and agreed to testify against defendant at trial.

Defendant moved to suppress the evidence obtained during the search of his residence, as well as the statements he made to the police at his house and during the interview at the sheriff's department. The trial court denied the motion to suppress, and the evidence was admitted at trial.

## I.

Defendant contends that the search of his residence and his interrogation at the station house were unconstitutional and that the trial court erred in refusing to suppress the evidence thus obtained. We perceive no error.

## A.

■ First, we reject defendant's contention that the officers' visual security sweep of the residence was improper.

When the officers arrived at defendant's residence, they believed the address on the search warrant was correct. The quick and cursory visual inspection of the house was appropriate in order to secure the safety of the officers and was discontinued as soon as the police learned of the incorrect address on the warrant.

■ We need not determine whether the incorrect address invalidated the search warrant because a warrantless search is valid when, as in this case, the officers executing the search are justified in believing that they are dealing with a potentially armed and dangerous individual and conduct a limited search for weapons to insure their own safety. *See People v. Bueno,* 173 Colo. 69, 475 P.2d 702 (1970). Therefore, contrary to defendant's assertion, the security sweep was not an unconstitutional search that rendered the subsequent search invalid.

## B.

Defendant next maintains that the officers used coercive tactics to obtain his consent to search his residence and that his consent was therefore involuntary. Thus, he argues, the subsequent search was unconstitutional, and the trial court erred when it denied his motion to suppress the evidence obtained in the search. We do not agree.

■ The voluntariness of a defendant's consent to a search is a question to be determined by the trial court in light of the totality of the circumstances surrounding the consent. The overriding inquiry is whether the consent was intelligently and freely given. *People v. Milton,* 826 P.2d 1282 (Colo.1992).

■ Here, based on the facts outlined above, the trial court concluded that there was no evidence that any of the police officers threatened or used force to secure defendant's consent. Further, the court found no evidence clearly indicating that defendant had an impaired state of mind or was in an unduly oppressive environment. Finally, the trial court found that there was no evidence that the officers made any promises to defendant in order to obtain his consent. Based on these factual findings, the trial court concluded that defendant's consent to the officers' search of his residence was intelligently and freely given.

■ Our role in reviewing the trial court's suppression ruling is a limited one. If the trial court applied the correct legal standard and its factual findings are "supported by adequate evidence in the record," we must uphold the ruling. *People v. Pearson,* 190 Colo. 313, 319, 546 P.2d 1259, 1263 (1976).

The trial court's ruling in this case meets that benchmark. Thus, the court properly denied· defendant's motion to suppress the evidence obtained in the search.

The trial court properly rejected defendant's assertion that the police used improper or coercive procedures after learning that the address on the warrant was incorrect. The search was not invalidated by the officers' having informed defendant that they would obtain a corrected warrant if he did not give them permission to search. *See People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974). Nor was it inappropriate for the police to remain on the premises while an amended warrant was being sought. *See Mayorga v. People,* 178 Colo. 106, 496 P.2d 304 (1972). Similarly, it was not unreasonable for the officers, in a continuing effort to secure their safety, to require defendant and the other occupants of the house to wait outside while the amended warrant was being obtained. *See People v. Lucero,* 720 P.2d 604 (Colo.App.1985).

## C.

Finally, defendant asserts that the statements he made to the police at his home and during the interview at the sheriff's department should have been suppressed because the officers did not advise him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Again, we disagree.

■ The procedural safeguards required by *Miranda* are triggered only when a sus-

pect is interrogated in a custodial setting. *People v. Trujillo*, 784 P.2d 788 (Colo.1990).

■ Whether a person is "in custody" is a question of fact to be resolved by the trial court. The trial court's determination will be upheld on appeal if it is supported by competent evidence and based on application of the correct legal standard. *People v. Haurey*, 859 P.2d 889 (Colo.1993).

■ A custodial interrogation is an interrogation conducted under circumstances in which the person being questioned has been taken into custody or otherwise deprived of his or her freedom in a significant way. *People v. Trujillo, supra.*

■ In determining whether a suspect has been subjected to a custodial interrogation, a trial court must consider the totality of the circumstances surrounding the interrogation. *People v. Trujillo, supra.* The standard is whether, under the circumstances, a reasonable person in defendant's position would believe himself or herself to be deprived of freedom of action in a significant way. *People v. Armstrong*, 720 P.2d 165 (Colo.1986).

■ Here, the trial court applied this objective standard and concluded that defendant was not under arrest and could not reasonably have believed that he was in custody when he made incriminating statements at his house and at the sheriff's department. That conclusion is amply supported by the evidence in the record. *See California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (where police told defendant he was not under arrest, but defendant voluntarily agreed to accompany police to station house for questioning, defendant's incriminating statements at the station house were not the product of a custodial interrogation); *People v. Bowman*, 812 P.2d 725 (Colo. App.1991) (defendant who was advised that he was not under arrest, could leave at any time, and could refuse to answer any questions, was not subjected to custodial interrogation).

## II.

■ Defendant next contends that the trial court committed reversible error when it refused to allow him to present an offer of proof. We disagree.

During defendant's direct examination, defense counsel asked him whether the victim had told him that the victim's trailer had been broken into on previous occasions. The question was asked after defendant had already admitted having taken items from the trailer. In response to a relevancy objection, defense counsel indicated that, despite defendant's admission that he had taken a number of items from the trailer, the proposed testimony might suggest that some of the missing items had been stolen by someone other than defendant. The trial court concluded that the proposed testimony was irrelevant. Defense counsel then asked to present an offer of proof which the trial court refused to allow.

■ Under the facts presented here, we reject defendant's assertion that the court committed reversible error in refusing to permit him to make an offer of proof.

CRE 103(a) provides as follows:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked.

Thus, if the substance of the excluded evidence is apparent, no formal offer of proof is required. CRE 103(a)(2); *see also Roberts v. C & M Ready Mix Concrete Co.*, 767 P.2d 769 (Colo.App.1988).

■ Nevertheless, the purpose of an offer of proof is to inform the trial court of what counsel expects to prove by the excluded evidence and to ensure that an appellate court will be able to evaluate the scope and effect of the ruling to determine whether the exclusion constituted reversible error. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103(03), 103–35 (1993). In light of that purpose, we can conceive of no sound reason for a trial court to deny counsel the opportunity to make an offer of proof, and we do not condone such a denial.

Here, however, the record reveals that the context of the question and defense counsel's explanation of the intended purpose of the testimony sufficiently informed the trial court of the nature of the proposed inquiry.

■ Further, the record supports the court's determination that the proposed questions would not have elicited relevant testimony. The information charged defendant with committing second degree burglary of a dwelling under § 18–4–203, C.R.S. (1986 Repl.Vol. 8B). Section 18–4–203 provides that a person commits that offense if "he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property." Section 18–4–203(1), C.R.S. (1986 Repl. Vol. 8B). Defendant was charged with breaking into the trailer with the intent to commit theft.

Under § 18–4–203, the prosecution was not required to prove as an element of the offense either that defendant actually took property from the trailer or the value of any property taken. Rather, the prosecution was required to show only that defendant intended to take property from the trailer. Defendant had admitted not only that he intended to take property from the trailer but also that he actually took a number of items. In light of these admissions, defendant's proposed testimony regarding previous break-ins of the trailer was irrelevant.

■ We also reject defendant's argument that the testimony as to other alleged break-ins would have been relevant to his affirmative defense that he took the items in satisfaction of a debt the victim allegedly owed him. More specifically, defendant claims that if some of the items missing from the victim's trailer had been stolen by someone else, the jury might have concluded that the value of the items defendant admitted to having taken did not exceed the amount of the alleged indebtedness.

However, the court instructed the jurors to find the defendant not guilty if they concluded that he entered the trailer "under the reasonable and good faith belief that he was collecting a just and honest debt then due."

Thus, to establish this defense, defendant did not have to prove that the value of the items he took from the trailer did not exceed the amount of the alleged debt. Accordingly, defendant's proposed testimony was not relevant to his defense.

We therefore conclude that although the trial court should have allowed defendant's offer of proof, no reversible error occurred under the circumstances presented here. *See Parliament Insurance Co. v. Hanson,* 676 F.2d 1069 (5th Cir.), *rehearing denied,* 688 F.2d 839 (5th Cir.1982) (no offer of proof necessary when offering party's position was adequately stated at trial and the record was susceptible to proper appellate review); *People v. Richmond,* 201 Ill.App.3d 130, 147 Ill.Dec. 302, 559 N.E.2d 302 (1990) (court's refusal to allow defense counsel to make offer of proof not reversible error when the nature of the evidence to be elicited was clear, and the evidence was not relevant).

Even if we were to conclude that the trial court erred in refusing to allow the offer of proof, any such error would have been harmless under the circumstances here, especially in light of the overwhelming evidence of defendant's guilt. *United States v. James,* 510 F.2d 546 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).

### III.

■ We also disagree with defendant's assertion that the trial court erred in denying his motion for mistrial based upon certain statements made by the prosecutor in closing argument.

During his summation, defense counsel attacked the credibility of defendant's brother-in-law. In rebuttal argument, the prosecutor made the following statement referring to the brother-in-law:

What would be a total travesty, I submit to you, is if the honest person, the honest man who felt compelled to remain honest, ended up servicing his 3–year conspiracy sentence [sic], and he was the only one, based on the facts, that did that. That would be a travesty.

The prosecutor also told the jury that the brother-in-law had been honest with the police.

The trial court sustained defendant's objection to the prosecutor's comments and instructed the jury as follows:

> The jury is instructed to disregard the reference to the co-conspirator's conviction in terms of what [the prosecutor] said.

In addition, the court had previously instructed the jury that closing arguments are not evidence. Further, at the conclusion of the trial, the court instructed the jury that it should rely only on the evidence presented at trial and the court's instructions and that it was not to consider any statements the court had instructed it to disregard.

■ At the outset, we note that mistrial is a drastic remedy and is warranted only when the prejudice to the defendant is too substantial to be remedied by other means. *People v. Collins*, 730 P.2d 293 (Colo.1986). Moreover, the trial court has broad discretion in determining whether mistrial is required, and its determination may be reversed only for gross abuse of discretion and prejudice to the defendant. *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

■ Here, to minimize or nullify the effect of the prosecutor's comments, the trial court promptly instructed the jury to disregard the comments. Absent a contrary showing, it is presumed that the jury understood and heeded the trial court's instructions. *People v. Moody*, 676 P.2d 691 (Colo. 1984).

We conclude that the trial court did not abuse its discretion in determining that the prosecutor's comments did not mandate a mistrial. The remarks were few in number, momentary in length, and were a very small part of a fairly lengthy summation. *See People v. Mason*, 643 P.2d 745 (Colo.1982). Thus, it is highly unlikely that the prosecutor's comments contributed to the jury's verdict. *See People v. Smith*, 685 P.2d 786 (Colo.App.1984).

## IV.

We also reject defendant's contention that the trial court erred in permitting the prosecutor to ask defendant's brother-in-law leading questions during redirect examination and in denying defendant's motion for a new trial on that basis.

■ Generally, a trial court is vested with substantial discretion in determining whether leading questions are permissible. Only if there is a clear abuse of that discretion will the trial court's ruling be disturbed. *Berger v. People*, 122 Colo. 367, 224 P.2d 228 (1950); *Bruce Hughes, Inc. v. Ingels & Associates, Inc.*, 653 P.2d 88 (Colo.App.1982).

■ Here, the testimony of the witness on cross-examination was somewhat confusing and unclear, so the trial court did not abuse its discretion in allowing the prosecutor, upon redirect examination, to ask leading questions designed to develop and clarify the witness' testimony. *See* CRE 611(c). We find no error.

## V.

■ Defendant finally contends that the trial court erred in permitting the prosecutor to ask defendant and his wife about their prior misdemeanor convictions for providing false information to the police in an unrelated case. We disagree.

At a hearing on defendant's motion *in limine*, the trial court ruled that the prosecution would be permitted to inquire about the substance of the misdemeanor convictions under CRE 608(b) as evidence of the witnesses' character for truthfulness or untruthfulness.

Immediately following defendant's testimony regarding his misdemeanor conviction, the court instructed the jury that it could consider that evidence only for the limited purpose of evaluating defendant's credibility. At the conclusion of the trial, the court again apprised the jury of the limited purpose for which some of the evidence had been admitted, and it further stated that one of the factors the jury could consider in assessing a witness' credibility was whether the witness had been involved in a prior transaction that reflected upon the witness' character for truthfulness or untruthfulness.

Relying on § 13–90–101, C.R.S. (1987 Repl.Vol. 6A), defendant urges that the admission of the evidence was error. We do not agree.

As a general rule, evidence of a prior misdemeanor conviction is not admissible for purposes of impeachment; however, "CRE 608(b) provides that a court, in its discretion, may allow evidence of specific instances of conduct to be inquired into on cross-examination if probative of truthfulness or untruthfulness." *People v. Armstrong,* 704 P.2d 877, 880 (Colo.App.1985).

Here, the prosecutor was inquiring into a specific occasion when defendant and his wife had given false statements to law enforcement officers. There was no effort on the part of the prosecutor to put on evidence of the actual misdemeanor convictions which resulted from the prior specific instances of lying.

Under these circumstances, we find no abuse of discretion in the trial court's allowing the testimony relating to these discrete instances of untruthfulness. *See People v. Drake,* 748 P.2d 1237 (Colo.1988).

The judgment is affirmed.

METZGER and JONES, JJ., concur.