Argued and submitted January 15, 1992; resubmitted In Banc August 5, reversed and remanded for new trial September 16, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## JAIME RODRIGUEZ,
*Appellant.*

### (90C-21424; CA A68804)

840 P2d 711

David B. Kuhns, Salem, argued the cause for appellant. With him on the brief was Todd & Kuhns, Salem.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

De MUNIZ, J.

Rossman, J., dissenting.

## De MUNIZ, J.

Defendant appeals judgments of convictions on two counts of delivering a controlled substance. ORS 475.992(1). He claims that the trial court erred by denying his motion to suppress tape recorded conversations between himself and an undercover agent. He also contends. that the court erroneously limited his cross-examination of the state's witnesses. We reverse and remand.

Officer Coggins, of the Woodburn Police Department, testified that, in October, 1990, he hired Kopp to perform "undercover services." On October 12, Coggins, Kopp and Officer Weaver planned a "controlled buy" in downtown Woodburn. Before the buy, Weaver searched Kopp to make sure that he was not carrying any contraband and then gave him $40 with which to make the purchase. Coggins hid inside a building and watched Kopp as he walked up to a group of people and contacted defendant. Coggins saw "an exchange of items" between defendant and Kopp, and he photographed the event. After the exchange, Kopp gave Weaver a bindle containing cocaine. Weaver testified that Kopp had been outfitted with a body wire to record the conversation between Kopp and defendant during the transaction. On October 13, Coggins and Kopp planned another controlled buy from defendant. Officer Collins searched Kopp and gave him $40. Again, Kopp wore a body wire. Kopp testified that he made another cocaine purchase from defendant.

On the day of trial, defense counsel orally made a motion *in limine* to exclude the body wire tapes and any evidence that was derived from them. The court denied the motion on the ground that a written motion to suppress was the only proper method for challenging the body wire evidence. Defendant contends that the tapes should have been suppressed, because the police did not obtain an *ex parte* order authorizing the use of the body wire, and the failure to obtain an order was not excused by exigent circumstances or probable cause to believe that defendant was about to commit a drug felony.[1] The issue is whether defendant can challenge,

---

[1] ORS 133.726(1) provides, in part:

"An ex parte order for the obtaining of any conversation in any county of this state under ORS 165.540(5)(a) may be issued by any judge * * * upon

by an oral motion *in limine*, the lawfulness of the body wire evidence.

ORS 133.736 establishes the procedure for challenging the introduction of conversations obtained under ORS 165.540(5)(a). It provides, in part:

"(1)   Any aggrieved person * * * may *move to suppress* under ORS 41.910 recordings of any conversation obtained under ORS 165.540(5)(a), or the testimony of any individual not a party thereto regarding any conversation obtained under ORS 165.540(5)(a).

"(2)   Such motion shall be made before the trial, * * *. If the motion is granted, the judge, *upon the filing of such motion*, by the aggrieved person, may in the judge's discretion make available to the aggrieved person or the person's counsel for inspection such portions of the intercepted communications or evidence derived therefrom as the judge determines to be in the interest of justice." (Emphasis supplied.)

ORS 41.910(2) provides:

"Evidence made inadmissible * * * due to noncompliance by a law enforcement officer with the conditions of ORS

---

written application made upon oath or affirmation of the district attorney for the county in which the order is sought or upon the oath or affirmation of any peace officer."

ORS 165.540 provides, in part:

"(1)   Except as otherwise provided in ORS 133.724 or subsection (2) to (7) of this section, no person shall:

"* * * * *

"(c)   Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained.

"* * * * *

"(5)(a)   The prohibitions in paragraph (c) of subsection of this section do not apply:

"* * * * *

"(B)   When a law enforcement officer obtains a conversation between the officer, or someone under the direct supervision of the officer, and a person who the officer has probable cause to believe has committed, is engaged in committing or is about to commit a crime punishable as a felony under ORS 475.992 or 475.995 or the circumstances at the time the conversation is obtained are of such exigency that it would be unreasonable to obtain the court order under ORS 133.726, providing the person who obtains or records the conversation does not intentionally fail to record and preserve the conversation in its entirety."

165.540(5)(a) shall only be inadmissible under this section pursuant to a motion to suppress under ORS 133.736."

ORS 133.726 and ORS 41.910(2) establish that a motion to suppress is the sole method for challenging the admissibility of an conversation intercepted under ORS 165.540(5)(a). A motion that must be filed, ORS 133.736.(2), is by necessity, a written motion. A formal, written motion to suppress serves two functions. It gives the state notice of the contentions that it must be prepared to address at the hearing, and it defines the issues to be decided by the court. *State v. Johnson/Imel*, 16 Or App 560, 566, 519 P2d 1053, *rev den* (1974). Defendant's motion, made just before jury selection on the day of trial, did not serve either of those functions, and the trial court correctly denied it.

In her opening statement, the prosecutor said, "Mr. Kopp was introduced to Detective Coggins through Mr. Kopp's roommate." Defendant argues that the court erred by limiting testimony about the roommate's identity and his involvement with undercover agents. He contends that that line of questioning was relevant to the issue of Kopp's bias.[2] That contention is purely speculative, because he did not make any record that would support that proposition.[3] Moreover, those questions were not designed to reveal that *"the witness [i.e.,* Kopp] engaged in conduct or made statements

---

[2] OEC 609-1(1) provides:

"The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statements or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be shown to the witness."

[3] Defendant's offer of proof consisted of this colloquy:

"DEFENSE [COUNSEL]: Mr. Kopp, you indicated that you had been motivated to get involved with the police through your roommate, is that correct?

"WITNESS: Correct.

"DEFENSE [COUNSEL]: Who is your roommate?"

The court instructed Kopp not to answer that question in order to protect the roommate's security and confidentiality. Defense counsel did not ask what the roommate had told Kopp about becoming an undercover agent. That information might have been relevant to the issue of the Kopp's bias, but we see no relevance in the identity of the person who conveyed that information.

showing bias or interest." OEC 609-1(1). (Emphasis supplied.) The court did not err in prohibiting Kopp from identifying his roommate.

Defendant testified at trial. He admitted that he was at the place where he allegedly sold drugs to Kopp on October 12 and 13, and he identified himself with Kopp in photographs that the state entered in evidence. However, he denied that he had ever sold drugs to Kopp. He testified that Kopp asked him for change to use the phone and that he gave Kopp a quarter. He also said that he may have given Kopp some cigarettes. He testified that he had listened to the body wire tapes, and he identified a voice on one of them as belonging to Jacob Corago. He denied that his voice was on either of the tapes.

His defense was that Kopp, Collins and Coggins were involved in multiple controlled buys on the 12th and 13th, and that somehow, they had confused him with another suspect. He attempted to show that Kopp, a paid undercover agent, was a biased and unreliable witness who could not accurately identify him as one of the people from whom he had purchased drugs. Defendant also tried to show that, because the officers were involved in other contemporaneous transactions, they became confused about the multiple suspects and misidentified defendant as one of the people who had sold drugs to Kopp. Defendant contends that several of the court's evidentiary rulings prevented him from adequately developing his defense.

In a pre-trial ruling, the court granted the state's motion to preclude defendant from asking Kopp whether he had ever been arrested. On direct examination, the prosecutor asked Kopp, "[W]ere you given any leniency in criminal matters or had parking tickets dismissed or anything of that nature?" That question opened the door to cross-examination about Kopp's arrest record.

Evidence about his prior arrests (if there were any), when they occurred, whether he had been charged and the disposition of charges are all matters that are potentially relevant to the issue of bias. The answers to those inquiries could have allowed the jury to infer that he was biased and giving testimony favorable to the state in exchange for a deal.

Defendant could not be expected to question him meaningfully about "favorable treatment" without asking the quintessential question about whether he had ever been arrested.

■ Defendant attempted to make an offer of proof, but the court interceded:

"No. I just absolutely will not allow any questions regarding any prior arrests of this person. As to convictions — and I'm not even going to permit an offer of proof on this."

If defendant had a basis for asserting that Kopp had made a deal, then exclusion of Kopp's arrest record was an error that defendant could preserve only by making an offer of proof. *State v. Affeld*, 307 Or 125, 129, 764 P2d 220 (1988). He had an absolute right to make an offer of proof. *See People v. Stewart*, 229 Ill App 3d 886, 594 NE2d 429 (1992); *Tatum v. State*, 798 SW2d 569 (Tex Cr App 1990), *aff'd* 821 SW2d 238 (Tex Ct App 1991). The court's refusal to allow him to make an offer was, by itself, erroneous.

On cross-examination, defense counsel asked Kopp, "Did [all of your drug buys] involve Spanish men?" The court sustained the state's objection to that question. Defendant contends that the court erred by limiting questions about the ethnic origin of other suspects. Kopp testified that he was involved in 10 controlled buys during the six weeks that he worked for the Woodburn police department. He testified that all of them occurred at the same location, that each time he started out with two $20 bills, that he wore a body wire and that he attempted to buy approximately a quarter gram of cocaine. When defense counsel asked if there were other people around on October 12 "who indicated a willingness to sell cocaine to you," Kopp answered,

"That's really hard to say because there are so many people down there. They all are willing to sell to you one way or another. It's just a matter of who is present."

He testified that there were several voices on the tape that was made on the 13th and that more than one of those people had indicated that they were willing to sell him cocaine.

Kopp testified, "I've got a good memory." Nonetheless, he said that it was necessary to refresh his recollection of the events of October 12 and 13 by reviewing the police

reports and that, without examining them, he would have no independent recollection of the details of what happened on each of those days.

■     Kopp had difficulty recalling how many people he had actually bought drugs from. During cross-examination, this colloquy occurred:

"Q:  Of the ten buys that you indicated that you were involved with, how many of them involved the same person more than once?

"A:  I believe three. Three different people twice.

"Q:  Okay. It would be a total of seven people that you bought drugs from?

"A:  Six—well, now, people I bought from. That would be—yeah, seven, okay.

"Q:  You sure of that?

"A:  Yes.

"Q:  Now when you testified earlier—

"A:  Can I restate that? I believe it was four people I bought from twice. And it was five people.

"Q:  It's been quite a long while, can you be sure it was five, not six?

"A:  Four.

"Q:  Okay, first you said it was, maybe, seven people you bought from, and maybe six. And five and now you're saying four?

"A:  Four people I bought from twice.

"Q:  That would be eight buys?

"A:  Correct."

Despite the fact that Kopp could not recall how many people he had bought drugs from, he testified that he could distinguish defendant from the other suspects. Whether the other suspects were of the same ethnic origin as defendant was relevant to an inquiry into whether they were similar to him in appearance, which in turn was relevant to the defense of mistaken identity. During defendant's offer of proof, Kopp stated that had bought drugs from one woman and five men, all of whom appeared to be Hispanic. The court erred by

refusing to allow defendant to place that relevant evidence before the jury.

Collins testified about his written report on the alleged sale that defendant made to Kopp on October 13. He testified that Kopp returned with $8 after making the buy. He admitted that he had incorrectly written down the amount as $10. He also admitted that his report inaccurately stated that the event occurred on October 10. Defendant's attorney asked why Jacob Corago's name appeared on the report but was scratched out.[4] Collins said that he had inadvertently written that name on the report. Collins described Corago and defendant. The descriptions that Collins gave of the two men are virtually identical.

When defendant's attorney asked if Collins was conducting a contemporaneous drug purchase, the court sustained the state's objection. As an offer of proof, defendant submitted what appears to be a packet of discovery documents in a case against Corago. Those documents indicate that Corago had participated in a drug transaction that Collins and Coggins observed on the afternoon of October 13 in downtown Woodburn. Defendant's offer of proof indicated that Collins did, in fact, orchestrate another controlled buy at approximately the same time as one the alleged buys from defendant. That buy involved a suspect whose description matched defendant's and whose name appeared on Collins' report. Defendant later identified Corago's voice on the body wire tape from October 12. The question about contemporaneous drug transactions was highly relevant to the issue of whether criminal activity by another suspect was mistakenly attributed to defendant. The court erred by refusing to allow defendant to ask Collins, in front of the jury, if he was involved in any other drug transaction at the same time as the one that allegedly involved defendant.

---

[4] The documents actually named Jacob Collazo. Defense counsel asserted that Collazo and Corago were the same person. The packet included a plea offer made by the district attorney, the indictment against Corago for delivery of a controlled substance, a printout of Corago's criminal history and Collins' reports on alleged drug transactions between an undercover agent and Corago and another suspect.

Defendant only offered the packet to show what relevant information would be revealed by questioning the witness. He makes no contention that the packet itself was admissible.

■ Defense counsel asked Coggins, "Do you recall testifying at the Grand Jury concerning a buy allegedly involving Jacob Corago?" The court sustained the state's objection to that question on the ground that it was not relevant. The question was relevant for the same reason that the question posed to Collins about contemporaneous drug transactions was relevant. The court erred by not allowing defendant to ask it.

■ The seeds of doubt regarding defendant's identity were sown by the evidence that was admitted. The court erroneously forbade inquiries that were directly relevant to the issues of bias and misidentification. Those rulings effectively precluded defendant from attempting to establish that the doubt already sown was reasonable.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

If ever there was a case involving harmless error, this is it. Even if the trial court erred when it prevented defendant from making an offer of proof about Kopp's prior arrest record and when it limited questioning regarding other controlled drug buys that the police were involved in, the record shows that defendant was allowed ample opportunity to ask questions and elicit testimony to establish his theories of bias and mistaken identity. Furthermore, any error was also harmless in view of the overwhelming evidence of defendant's guilt.

Although defendant was not allowed to ask Kopp whether he had ever been arrested, he *was* allowed to ask Kopp whether he had ever "received any favorable treatment from any arrests." He was also allowed to ask questions "regarding [Kopp's] past, or crimes, drug use, whether or not he was under the influence on that particular day." Therefore, although the court prohibited defendant from asking *one* question about Kopp's arrest record, it allowed a plethora of other questions about closely related matters that, depending on Kopp's answers, might have allowed the jury to infer that he was offering favorable testimony "in return for a deal." *However, defendant did not avail himself of that opportunity.* On cross-examination, he asked no questions about Kopp's motives, perhaps due to Kopp's unimpeachable

responses to the district attorney's questions on direct examination: "[A]re you, yourself, involved in using drugs or controlled substances of any sort?" "[W]ere you [at the time of the buy] under the influence of any controlled substances?" "[H]ave you ever used controlled substances?" "When did you use marijuana?" "[W]ere you at any time given any * * * [non-pecuniary] benefit for your work; were you at all, let's say, *given any leniency in criminal matters* or had parking tickets dismissed *or anything of that nature*?" (Emphasis supplied.) The information that defendant sought to elicit was provided on direct examination and, although defendant could have questioned Kopp about those matters on cross-examination, he chose not to. He should not be allowed to complain on appeal that he was somehow prejudiced by his own failure, especially where the jury was given ample opportunity to assess the credibility of the state's witness. *State v. Hubbard*, 297 Or 789, 800, 688 P2d 1311 (1984).

Defendant also argues that the trial court erred in "refusing to allow" him to cross-examine Kopp and the police officers about other controlled drug buys that they were involved in when they purchased from defendant. However, in page after page, the record shows that defendant was given considerable latitude in that regard, and was allowed to question the state's witnesses extensively. Although he was prevented from asking Kopp to describe the physical appearance and names of the other drug sellers, that did not inhibit defendant's attempts to show that there was confusion regarding the identity of the various sellers and that the witnesses had mistaken him for another person who matched his description.

Defendant asked Kopp numerous questions, including the following:

"Mr. Kopp, were you involved in more than one drug transaction on the 13th of October?"

"How many were you involved in?"

"Where did that take place?"

"Who were the officers involved at that time?"

"How long did you work for the Woodburn Police Department on the drug investigation?"

"How many drug buys were you involved in at the time you worked for the Woodburn Police Department?"

"And were all of the drug buys in the same general vicinity?"

"[W]ere there other individuals around who indicated a willingness to sell cocaine to you?"

"Of the ten buys that you indicated that you were involved with, how many of them involved the same person more than once?"

"[Have] you looked at the photographs from any of the other drug buys to compare people?"

"Is it fair to say you can't tell us from your own memory that this is, in fact, the person you bought from on October 13th as opposed to October 12th or October 9th or some other time you were making purchases for the Woodburn Police Department?"

"You can't tell [defendant] from any of the other five people you bought drugs from?"

"How is he different from the other five?"

"Do you have an independent recollection of which transaction took place on October 13th, the one you say involved my client or the one you say involved the other individual?"

"So you don't know which one happened at 3:00 o'clock and which one happened at 6:00 o'clock, is that correct?"

"And is it also possible that you could be mistaken as to who it is on this particular case based on your recollection of the voice?"

"When you testified earlier that the substances that have been shown to you looked really similar, can you, of your own independent recollection, tell us if they are, in fact, items that you received from my client as opposed to one of these other individuals?"

Kopp's answers to those questions allowed defendant to establish that other controlled buys were taking place in the same location, that Kopp had difficulty recalling how many people he had bought drugs from, that he had no independent recollection of the various sellers, that there were a number of people around him when the transactions took place and that more than one of those people had indicated a willingness to sell him cocaine.

On cross-examination of Collins, defendant was allowed to ask about another alleged drug seller whose name appeared on defendant's police report but was scratched out. By questioning Collins, defendant was able to show that both he and the other suspect were described as Hispanic, male, 5 foot 10 and 150 pounds. When defendant tried to ask Collins if another drug purchase had been conducted at the same location and at the same time as the buy that involved defendant, the court sustained the state's objection. However, defendant was allowed to ask other questions that showed that, on the same date and at the same time, Collins had met with Kopp and a second undercover agent for the purpose of making controlled narcotics buys in downtown Woodburn.

In short, the record does not support defendant's claim that the trial court "refused to allow" him to question the state's witnesses about other controlled drug buys. Neither does it show an improper limitation on defendant's attempts to show confusion regarding the identity of the various sellers. His questions were curtailed only when they were irrelevant or would have confused the jury. Moreover, the question about other drug purchases at the same location and on the same day had already been answered by two other witnesses and was largely cumulative. *State v. Hubbard, supra*, 297 Or at 800.

Finally, even if the trial court erred in disallowing defendant's question and his offer of proof, I would hold that the errors were not harmful. Kopp and two officers testified that Kopp had been searched on two occasions and given money for a drug buy, had made contact with defendant, had exchanged items with him and had returned with a bindle of cocaine. Kopp was constantly under surveillance by the officers, was wearing a body wire and was photographed during the drug buys. Defendant is depicted in the photographs; at trial he was wearing the same coat that he wore during the buys. Defendant testified that, in the photographs, he is not selling cocaine to Kopp, but is merely loaning him a quarter to make a telephone call. However, that testimony is refuted by the body wire tape recording.

Although we must carefully scrutinize any instance in which a trial court prevents a defendant in a criminal case

from making an offer of proof, the error in this case was minor and harmless; it does not warrant reversal. Accordingly, I dissent.

Buttler, Deits and Riggs, JJ., join in this dissent.