Argued and submitted July 30, 2013, convictions on Counts 1, 2, 3, 4, and 6 reversed and remanded; remanded for resentencing; otherwise affirmed May 20, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RODOLFO CERVANTES, JR.,
*Defendant-Appellant.*

Malheur County Circuit Court
09122662C; A146982

351 P3d 761

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the answering brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General. With him on the supplemental brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Nakamoto, Presiding Judge, and Haselton, Chief Judge, and Egan, Judge.*

HASELTON, C. J.

---

* Haselton, C. J., *vice* Armstrong, P. J.

## HASELTON, C. J.

Defendant was convicted of 21 criminal counts arising, principally, from his sexual conduct with three minor males. On appeal, he raises several assignments of error challenging various of those convictions that arose from conduct involving the complainant, C. In particular—and dispositively here—defendant asserts that the trial court erroneously—during an offer of proof—preempted defense counsel from cross-examining C as to whether he had "voluntary sexual relations" with defendant. As described below, we conclude that the trial court erred in so precluding defense counsel's cross-examination of C and that that error was not harmless as to defendant's convictions on Count 1 (first-degree sodomy), Count 2 (first-degree sexual abuse), Counts 3 and 6 (second-degree sexual abuse), and Count 4 (third-degree sexual abuse). Accordingly, we reverse and remand as to those convictions, and otherwise affirm.[1]

Because we address only the asserted errors relating to preclusion of cross-examination, we recount the circumstances pertaining to that preclusion and, consistently with our standard of review, the totality of the evidence material to assessing potential prejudice from that preclusion. *See State v. Eckert*, 220 Or App 274, 276, 185 P3d 564, *rev den*, 345 Or 175 (2008) (in assessing "whether the erroneous admission of disputed evidence was harmless, we describe and review all pertinent portions of the record"). Defendant's convictions involving C arose out of two incidents—one in early 2009 and the other in May 2009. It is undisputed that those incidents arose in the context of a preexisting relationship between defendant and C.

Beginning sometime in 2007 or 2008, defendant, who worked in a hair salon in Ontario, befriended C, who

---

[1] Given our analysis and disposition, we need not reach and resolve defendant's supplemental assignment of error that the trial court committed "plain error" when it failed to instruct the jury that, to convict defendant of first-degree sodomy or first-degree sexual abuse, the state was required to prove that defendant not only subjected C to forcible compulsion, but did so knowingly. *See State v. Nelson*, 241 Or App 681, 688, 251 P3d 240 (2011), *rev dismissed*, 354 Or 62 (2012).

Further, the parties concur that the trial court's entry of an amended judgment after the filing of appellant's opening brief has rendered the remaining assignment of error moot.

was then a 16-year-old sophomore in high school. Every few days, C would stop by the salon to see defendant and talk. Sometimes, defendant gave C free haircuts and, occasionally, he would take C to the shopping mall in Boise, where he would pay for C's purchases. On other occasions, defendant also bought C food and alcohol and gave him marijuana.

The first predicate incident allegedly occurred in early 2009, when C was 17 years old.[2] At trial, C recounted that incident as follows: Defendant kissed C, and C pushed him away, telling defendant that he "wasn't gay." Defendant then pulled down C's pants and touched C's penis; defendant also grabbed C's hand and placed it on defendant's penis. Defendant then told C to "turn over" and, when C refused, defendant "flipped" C over, grabbed the back of his neck, and pushed his face down into the couch. Defendant inserted his penis into C's anus and ejaculated. At some point, C "yelled" at defendant to "stop." Afterward, defendant told C that he would harm C's friends and family if he reported the incident.

The second charged incident allegedly occurred in May 2009 at defendant's home. C testified that defendant had invited him and one of his friends to defendant's house and had given them both alcohol and marijuana. Then, according to C, defendant had performed oral sex on him and inserted his penis into C's anus. C testified that he thought to himself that he "just wanted it to get over with." Afterward, C spent the night at defendant's house.

In addition to C's account of the two charged incidents, the state, by way of further direct examination of C during its case-in-chief, presented other testimony from C in which he described numerous other sexual contacts with defendant. For example, when asked on direct examination if there were times that defendant touched him "inappropriately" after giving C "drugs and alcohol," C replied, "Yes" and explained that, after getting high and drinking, "[defendant] would give me and [my friend] [oral sex] and have us have sex with him and he would have sex with me." C also testified that he and defendant would "get high and

---

[2] As we explain below, C's age was material to the theory of defense at trial—and, in turn, to defense counsel's putative, preempted cross-examination.

go cruise around [in defendant's car] and *** [defendant] would have one of us drive and [defendant] would give [oral sex] to the person who was driving." C also testified that, other than the first. charged incident, sexual activity had happened "three or four times" at C's house.

Sometime shortly after the second alleged incident, C reported the abuse to his counselor at a substance abuse treatment facility.[3] Following C's report, defendant was charged with, *inter alia*, one count of first-degree sodomy, ORS 163.405(1)(a);[4] one count of first-degree sexual abuse, ORS 163.427(1)(a)(B);[5] two counts of second-degree sexual abuse, ORS 163.425(1)(a);[6] and one count of third-degree sexual abuse, ORS 163.415(1)(a).[7] With respect to the first-degree sodomy and first-degree sexual abuse charges, the state was required to prove that defendant subjected C to forcible compulsion. With respect to the second- and third-degree sexual abuse charges, the state was required to prove that C did not consent to the charged sexual contact. Because

---

[3] At some point after making that report, C obtained a weapon and stole a car with the intention of shooting defendant; the police apprehended him en route.

[4] ORS 163.405(1)(a) provides:

"A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a) The victim is subjected to forcible compulsion by the actor[.]"

[5] ORS 163.427(1)(a)(B) provides:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"*****

"(B) The victim is subjected to forcible compulsion by the actor[.]"

[6] ORS 163.425(1)(a) provides, in part:

"A person commits the crime of sexual abuse in the second degree when:

"(a) The person subjects another person to *** deviate sexual intercourse *** and the victim does not consent thereto[.]"

[7] ORS 163.415(1)(a) provides:

"A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"(A) The victim does not consent to the sexual contact; or

"(B) The victim is incapable of consent by reason of being under 18 years of age[.]"

C was under the age of 18, the requisite lack of consent could be established by proof of either lack of actual consent or inability to consent due to age (*viz.*, being under the age of 18). However, because C was over the age of 16, defendant could negate inability to consent due to age through proof that he "reasonably believed [C] to be above [the age of 18] at the time of the alleged offense." ORS 163.325(2).

At trial, defendant advanced a hybrid defense with two components: (1) C voluntarily participated in the charged sexual contact, negating forcible compulsion with respect to first-degree sodomy and first-degree sexual abuse, as well as lack of actual consent with respect to second- and third-degree sexual abuse; and (2) defendant believed that C was over the age of 18 and that mistaken belief was reasonable, negating inability to consent due to age with respect to second- and third-degree sexual abuse. In support of that defense, defendant offered, *inter alia*, his own testimony as to both actual consent and mistake of age. In addition, the defense also attempted, through cross-examination of C, to elicit an admission from C that he had voluntarily engaged in sexual conduct with defendant.

That putative cross-examination—which occurred in the context of a defense offer of proof—is the focus of our review. After C testified on direct examination, defense counsel then cross-examined him on the details of the charged incidents, and C adhered to his account that he had resisted those sexual contacts.[8] Then, defense counsel sought leave to make an offer of proof as to a variety of matters. During that offer of proof, the following colloquy occurred:

"[DEFENSE COUNSEL]:   Okay. [C], *I might as well ask you this out of the earshot of the jury, you did have voluntary sexual relations with [defendant], didn't you*?

"[PROSECUTOR]:   Your Honor, I'm going to object to this. This is not a proper question for this witness to have to answer.

---

[8] For example, on cross-examination, C reiterated that he had "yelled at" defendant to "stop" during the first incident. However, during other testimony on cross-examination, C acknowledged that, even after the first incident, he frequently went to defendant's home, that he was not afraid of defendant, and that he would spend the night in defendant's bed.

"THE COURT: *His sexual orientation or whether he had voluntary sex—consent is not a defense here. He's already described the incidents that I think the jury can make whatever inference they want about whether it was forcible or not.* The alternative clothing he's described does not paint him as gay by any means; it sounds Goth to me. * * * So I think you can get into all you want about him lying about his age to people, but as far as how he was dressed and what his—what his orientation is, that doesn't have anything to do with anything.

"[DEFENSE COUNSEL]: Well, but whether he voluntarily had sexual relations with [defendant] is admissible.

"THE COURT: How?

"[DEFENSE COUNSEL]: Because it—the sexual relationship with the accused, the voluntary sexual relationship with the accused is admissible.

"THE COURT: He can't voluntarily engage in sex with him, he's below the age of consent.

"[DEFENSE COUNSEL]: But he wasn't the whole time.

"* * * * *

"THE COURT: He was the whole time.

"* * * * *

"[DEFENSE COUNSEL]: *And it goes to whether or not it was forceful or not.*

"THE COURT: *He's described one incident and the others he's not. I'm not going to allow that. You can ask all you want about him lying about his age but not get into any of this other [stuff]."*

(Emphases added.) Thus, the trial court not only ruled that defense counsel could not question C in the jury's presence about the voluntariness of sexual contacts with defendant, but also preempted defense counsel from eliciting that putative testimony by way of an offer of proof.

At closing, defense counsel argued that C and defendant had a relationship, and that C had "lied about his age."[9]

---

[9] The court instructed the jury on the affirmative defense of reasonable mistake as to age.

Counsel then argued that, when the "relationship broke apart, [C] became scorned" and that is why he lied about the sexual abuse. Ultimately, the jury convicted defendant on all five counts relating to sexual contact with C as described above.

On appeal, defendant argues that the trial court "erroneously excluded relevant evidence" when it prohibited him from asking C "about whether he had had consensual sex with defendant," because "defendant's guilt or innocence turned on whether [C] had consented to that contact."[10] Defendant concurrently contends that the court erred when it denied him the opportunity to make an offer of proof as to that issue because a party has an "absolute right" to make an offer of proof.

The state does not defend the trial court's decision to preempt defendant's offer of proof on that matter. Instead, the state contends that that error was harmless because, regardless of C's putative answer, that response would have been inadmissible before the jury as a matter of law. Specifically, the state posits that, when defense counsel asked C whether he had "voluntary sexual relations with [defendant]," counsel was trying to elicit information about C's *entire* relationship" with defendant to support "an inference that because the victim had consented to sexual contact on other occasions, he had likely consented to sexual contact on the occasions alleged in the indictment." (Emphasis in original.) The state argues that the response to such an inquiry would have been ultimately inadmissible because OEC 412 "prohibits the use of that kind of evidence to support that type of inference" or, failing that, pursuant to OEC 403 balancing. The state also argues, alternatively, that, even if C's response would have been admissible before the jury, and even assuming that C would have answered defense counsel's question affirmatively, the preclusion of

_____

[10] Taken literally, defendant's characterization is overbroad. As noted above, *see* 271 Or App at 237, defendant's culpability as to first-degree sodomy and first-degree sexual abuse did turn on forcible compulsion, which could be contradicted by C's actual consent; however, the jury could still have convicted defendant of second- and third-degree sexual abuse, even if C had actually consented to the charged conduct, but only if the jury rejected defendant's defense of reasonable (mistaken) belief as to C's age.

that response was harmless in that, given the totality of the other evidence as to defendant's interactions with C, there was little likelihood that the putative response would have affected the verdict.

As a threshold matter, we agree with defendant that the trial court erred in preempting the putative cross-examination. In the absence of exceptional circumstances, *e.g.*, a claim of privilege, the mere fact that testimony elicited via an offer of proof may be inadmissible before the trier of fact is not a basis to preempt that putative testimony. To the contrary, offers of proof occur, quintessentially, in that posture. *See, e.g., State v. Rodriguez*, 115 Or App 281, 287-90, 840 P2d 711 (1992) (reversing and remanding for a new trial where, *inter alia*, trial court preempted defense offer of proof inquiring as to whether state's witness had prior arrests: "[the defendant] had an absolute right to make an offer of proof").[11]

The inquiry thus reduces to whether that error was harmless for either of the two alternative reasons the state posits—*viz.*, that, because of the application of OEC 412 or OEC 403, C's responses would not have been admissible before the jury or, even if admissible, there is little likelihood that even an affirmative response would have affected the verdict.

Our consideration of those contentions proceeds from the premise that (as the state urges) the trial court understood—and reasonably could have understood—defense counsel's question to C to relate solely to sexual contacts with defendant other than the two charged incidents. Although counsel's question to C was phrased generally, and perhaps even ambiguously, in the totality of defense counsel's cross-examination of C before the jury, as well as the balance of the offer of proof, that question pertained to defendant and C's "relationship." Given C's testimony on direct

---

[11] We note that preemption of an offer of proof in the context of criminal defense counsel's cross-examination of the complaining witness is especially problematic. *Cf. Chambers v. Mississippi*, 410 US 284, 295, 93 S Ct 1038, 35 L Ed 2d 297 (1973) ("The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process." (Internal quotation marks omitted.)).

examination with respect to the charged incidents and his statement on cross-examination before the jury that he had "yelled at" defendant to "stop" during the first charged incident, further inquiry as to whether those charged contacts were voluntary would almost certainly have been unavailing and gratuitous. Conversely, obtaining an admission from C that he had, in fact, sometimes actually engaged in "voluntary sexual relations with [defendant]"—a matter not explored by defense counsel on cross-examination before the jury—might, in combination with C's admission that he had interacted with defendant dozens of times after the first incident, call into question C's adamant account that he had not consented to the charged conduct. Thus, the referent for our analysis that follows is a putative response to whether C had voluntarily engaged in other, uncharged, sexual contacts with defendant.

As noted, the state first contends that any such response would, ultimately, have been inadmissible under OEC 412. That rule reads, in pertinent part, as follows:

"(2)   Notwithstanding any other provision of law, in a prosecution for a crime or an attempt to commit a crime listed in subsection (1) of this section or in a proceeding conducted under ORS 163.760 to 163.777, evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless the evidence other than reputation or opinion evidence:

"(a)   Is admitted in accordance with subsection (4) of this section; and

"(b)   Is evidence that:

"(A)   Relates to the motive or bias of the alleged victim;

"(B)   Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C)   Is otherwise constitutionally required to be admitted.

"* * * * *

"(4)(a)   If the person accused of a crime or an attempt to commit a crime listed in subsection (1) of this section, or the respondent in a proceeding conducted under ORS 163.760 to 163.777, intends to offer evidence under subsection (2)

or (3) of this section, the accused or the respondent shall make a written motion to offer the evidence not later than 15 days before the date on which the trial in which the evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which the evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and, in a criminal proceeding, on the alleged victim through the office of the prosecutor."

The state emphasizes that defendant did not comply with the notice provisions of subsection (4)(a) and further contends that, in all events, the putative testimony would not have satisfied the requisites of subsection (2).

The state's invocation of OEC 412 in this posture is, respectfully, ironic: It was the state itself that, on direct examination of C, first elicited extensive testimony describing his other, uncharged sexual contacts with defendant. Accordingly—and unsurprisingly—the state, in objecting to defense counsel's question during the offer of proof, never referred to OEC 412. Regardless of whether OEC 412 might otherwise have precluded the defense from inquiring, in the first instance, about such contacts—a matter that we need not, and do not, reach and resolve[12]—the state opened the door for exploring the character of those contacts, including whether C had voluntarily engaged in them. *See, e.g., Rodriguez*, 115 Or App at 286 (prosecutor's inquiry on direct examination of state's witness as to whether he had been given "any leniency in criminal matters" "opened the door to cross-examination about [that witness's] arrest record"); *cf. State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879 (1990) ("A defendant's own inquiry on direct

---

[12] Given the procedural posture of this case, in which the state raised no OEC 412 based objection, we imply no view as to the proper application of OEC 412 to circumstances bearing on a complainant's purported consent when a defendant raises a mistake of age defense. *Cf. State v. Morgan*, 66 Or App 675, 675 P2d 513 (1984) (evidence of the victim's past sexual behavior with the defendant can be considered as forming the foundation of a motive to make a false accusation of rape).

examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."). Further, the voluntariness of those contacts related materially to defendant's position that C had consented in fact to the charged contacts, as part of an ongoing voluntary relationship, and fabricated his accusations only after that "relationship broke apart."

The state's alternative appellate reliance on OEC 403 is similarly unavailing.[13] At no time in the colloquy before the trial court did the state ever invoke that provision; nor did the trial court purport to engage in any balancing.[14] Given the innately discretionary character of that determination, we reject that proffered alternative basis for affirmance. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing constraints on appellate court's ability to consider respondents' "right for the wrong reason" arguments raised for first time on appeal).

Finally, the state posits that, even assuming the admissibility of C's putative response and even assuming that that response would have been affirmative—that is, that C would have agreed that he had voluntarily engaged in other, uncharged sexual contacts with defendant—preclusion of that response was harmless, given the totality of the evidence. The state emphasizes C's testimony on direct examination and cross-examination before the jury regarding the uncharged sexual contacts as well as other interactions with defendant, noting that "[t]he victim said nothing about defendant making statements to him during those [uncharged] incidents to compel his cooperation." The

---

[13] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[14] Instead, from the colloquy quoted above, it appears that the trial court proceeded from the premise that, given C's age at the time of the charged conduct, C's putative response, regardless of the answer, was categorically irrelevant. Given the nature of the charges and the theory of the defense, *see* 271 Or App at 237-38, that ostensible premise was incorrect.

state also points to defense counsel's statement in closing argument that "[t]hose are things that people do when they're in a voluntary sexual relationship, which is really what this appears to be."

We cannot agree with the state that exclusion of an affirmative response by C would have been harmless. To be sure, C testified at some length regarding his interactions with defendant, including uncharged sexual contacts. Nevertheless, C never testified that any of those sexual contacts was, in fact, voluntary—that is, that he consented in fact to such conduct. Nor, contrary to the state's suggestion, do the circumstances of the uncharged contacts establish, albeit by necessary implication, that C did, in fact, voluntarily engage in one or more of those contacts. Thus, the testimony that defense counsel sought to elicit was not merely cumulative or duplicative of other evidence. *See, e.g., State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003). An explicit personal admission by C of having engaged in "voluntary sexual relations" with defendant would have been "qualitatively different than the evidence that the jury heard." *Id.* at 34.

Finally, such an answer would have gone "directly to the heart of defendant's factual theory of the case." *Davis*, 336 Or at 34. As noted, *see* 271 Or App at 237-38, the defense was predicated on actual consent, as supplemented (for the second- and third-degree sexual abuse charges) by reasonable mistake of C's age. Defendant contended that the charged acts were, in fact, consensual, and occurred in the context of an ongoing, voluntary relationship, with C fabricating his accusations only after defendant had broken off that relationship. The response that defense counsel sought would—if given—have buttressed that defense.

Of course, we do not know, and cannot know, what C's response would have been. But that is through no fault of defendant's. In this circumstance, a remand for a new trial is required on the challenged counts. *See Allen v. Palmateer*, 219 Or App 221, 182 P3d 255 (2008) (concluding, where trial court precluded offer of proof, that, "notwithstanding the absence of an offer of proof that would permit us to determine whether the court's decision to exclude evidence prejudiced petitioner, we must reverse the judgment and remand

the case for a new post-conviction trial" (internal citation omitted)).

Convictions on Counts 1, 2, 3, 4, and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.